UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 6:12-cr-261-Orl-28KRS

BRUCE LEE JENNINGS

**NOTICE OF MAXIMUM PENALTY, ELEMENTS OF OFFENSE, PERSONALIZATION OF ELEMENTS AND FACTUAL BASIS**

The United States of America respectfully submits that the following constitute the essential elements, maximum statutory penalties, and factual basis in this case:

## I. Elements

A. The essential elements of Count One, Distribution of Child Pornography, 18 U.S.C. § 2252A(a)(2) are as follows:

First: The defendant knowingly distributed an item or items of child pornography;

Second: the item(s) of child pornography had been transported in interstate commerce, including by computer over the internet; and

Third: when the defendant distributed the items, the defendant believed the items were child pornography.

B. The essential elements of Count Two, Possession of Child Pornography, a violation of 18 U.S.C. § 2252A(a)(5) are as follows:

First: The defendant knowingly possessed an item of child pornography;

Second: the item of child pornography had been transported in interstate commerce, including by computer over the internet; and

Third: when the defendant possessed the items, the defendant believed the items were child pornography.

## II. Maximum Statutory Penalties

A. The maximum statutory penalties for Count One, Distribution of Child Pornography are as follows:

Not less than 5 years, not more than 20 years' imprisonment -

18 U.S.C. § 2252A(b)(1);

Not less than 5 years, not more than Life Supervised Release -

18 U.S.C. § 3583(k)

Not more than a $250,000 fine - 18 U.S.C. § 3571(b)(3)

$100.00 special assessment - 18 U.S.C. § 3013(a)(2)(A)

B. The maximum statutory penalties for Count Two, Possession of Child Pornography are as follows:

Not more than 10 years' imprisonment - 18 U.S.C. § 2252A(b)(2);

Not less than 5 years, not more than Life Supervised Release -

18 U.S.C. § 3583(k)

Not more than a $250,000 fine - 18 U.S.C. § 3571(b)(3)

$100.00 special assessment - 18 U.S.C. § 3013(a)(2)(A)

## III. Forfeitures

From his engagement in the violations alleged in Counts One and Two of this Indictment, the defendant, **BRUCE LEE JENNINGS**, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 2253, all of his interest in:

a. Any visual depiction described in Title 18, United States Code, Sections 2251, 2251A, or 2252, 2252A, 2252B, or 2260 of this chapter, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped, or received in violation of this chapter:

b. Any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and

c. Any property, real or personal, used or intended to be used to commit or to promote the commission of such offense, including but not limited to the property located at 2689 Spruce Creek, Port Orange, FL; Seagate external hard drive; Toshiba laptop; and the Western Digital external hard drive computers.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 2253(b), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

**IV. Factual Basis**

If this case were to go to trial, the United States would be able to prove the following specific facts and others beyond a reasonable doubt:

FACTS

On August 21, 2012, Task Force Agent (TFA) Daniel Ogden of the Brevard County Sheriff's Office in Rockledge, Florida was conducting investigations into the sharing of "Child Pornography" on the Ares Peer-to-Peer (P2P) file sharing network. TFA Ogden located a computer with IP address 184.42.12.26, which was online sharing files of child pornography. The IP address 184.42.12.26 was identified as a candidate to download suspected child pornography based on records contained within a law enforcement database. The database compiles suspected IP

addresses based upon searches conducted for files previously observed by investigators searching the network by keywords or SHA-1 values. This IP address was identified as a download candidate for 14 files based on file query results with SHA-1 values matching suspected child pornography.

During the installation of the Ares program, the user is prompted to choose a nickname. The nickname is used in the Ares peer to peer chat features. The nickname is transmitted with the query result. If a user chooses not to specify a nickname, he will receive a nickname having a prefix "anon_." The nickname obtained from the suspected computer was: anon_b82a0c1a@Lime.

On Wednesday, August 22, 2012, between 1333 hrs and 1358 hrs EDT, the Law Enforcement Roundup Ares software program successfully completed the download of the following 5 files that the computer at IP address 184.42.12.26 was making available (represented below by their file names and corresponding SHA-1 values). After the files were downloaded, SA Grey viewed the files. The files are described as follows:

> Sexo infantile_penetrando uma menininha de 11 anos.avi
> 3FWJ2W4CJZMDI3CNJGUFG2SJEXLKPPTN – a movie file depicting an adult male engaged in sexual intercourse with a nude girl, approximately six to eight years of age.

> malolata 2_pthc - 11yr son eat mom to orgasm.mpeg
> 5PYX2XO5PK27NZAJUWGT4TJLNCH2A3CG – a movie file depicting a possibly minor nude male of undetermined age, performing oral sex on an adult female.

(pthc-jho-lolifuck) 6 yo girl gets cum in mouth in laundy room(3).wmv
56QEFFR2HLRLC65KCIIN26LUR5KQAVGZ – a movie file depicting a girl, approximately seven to nine years of age, performing oral sex on an adult male.
13y kaylyndianaa webcam stickam bates on cam 2011(2).avi
ZNXRA5Z2OKDVX4FOACE6DCVB43PHOAHK – a movie file depicting a post pubescent female, possibly a minor, of undetermined age, masturbating and inserting her fingers into her vagina.

babyj-fuck me! ggggg.wmv
23LMFN5BVJTZDGDI3DD7WNFDUXUWMKMA – a movie file depicting an adult male inserting his penis repeatedly into the vagina of a minor female child. This child is approximately four to six years old in this movie. The child in this movie is a known previously identified child victim according to the National Center for Missing and Exploited Children.

After determining that the IP address 184.42.12.26 was registered to AT&T and JENNINGS was the subscriber, on August 31, 2012, RAC/CB CETF Task Force Agent L. Feaster conducted surveillance at JENNINGS home in Port Orange, FL. During the surveillance, he conducted a wireless network check and determined that there were no wireless signals detected when positioned outside of JENNINGS address in Port Orange.

On September 14, 2012, RAC/CB Child Exploitation Task Force (CETF) agents properly executed a federal search warrant at the residence of subject JENNINGS, 2689 Spruce Creek Blvd., Port Orange, FL. Just prior to the search of the premises at approximately 8:30 p.m., SA Grey, along with SA Ken McClenahan conducted a knock and talk encounter with, and non-custodial recorded interview of, Bruce Lee JENNINGS outside the JENNINGS residence.

During this initial interview, JENNINGS denied any intentional involvement in downloading or viewing images of child pornography. He stated that he had some old computers in his garage, a home computer in the house and a laptop that belonged to his wife. Additionally, he claimed that there were no computers in any of his vehicles on the premises.

On the computers he did own, JENNINGS denied using any kind of file sharing software. JENNINGS stated that his wireless internet signal at his home is password protected and none of his neighbors know the password. Visitors or relatives do not come to the house to use their computers. He and his wife are the only occupants of the home.

At this point, SA Grey and SA McClenahan asked JENNINGS for consent to search his computers in the home. After hesitating, JENNINGS consented, but said that he wanted to talk to his wife first. SA Grey asked if JENNINGS minded if the agents walked back in the house with him. JENNINGS stated that he did mind and asked the agents to wait on the front porch, where they had been talking. JENNINGS went back in the house whereupon SAs Grey and McClenahan decided to execute the search warrant.

SAs Grey and McClenahan entered the house and asked JENNINGS and his wife, Mrs. Jennings, to both come back to the front door. SA Grey then notified JENNINGS and Mrs. Jennings that the agents had a search warrant for the premises and presented them with the search warrant. The purpose of the search

warrant was to search the property, including the house, for evidence of possession, receipt, and/or distribution of child pornography. SA Grey advised JENNINGS and Mrs. Jennings of their Miranda rights. SA Grey asked them if they understood their rights. JENNINGS stated that he understood those rights but wanted to talk to his wife first. SA Grey told JENNINGS that he needed to know if JENNINGS still wanted to speak with SA Grey. JENNINGS told his wife to refuse to answer questions. SA McClennahan took JENNINGS outside because Mrs. Jennings appeared confused and upset. SA Grey then repeated the Miranda Rights to Mrs. Jennings, which she acknowledged she understood.

Once outside, JENNINGS told SA McClenahan that he did not want his wife involved, and that he was the one who had been downloading and viewing child pornography on the computers. JENNINGS stated his wife had no knowledge of his activities and he wanted to protect her from any further embarrassment this investigation may cause. SA McClenahan immediately informed SA Grey of JENNINGS' statements. While SA Grey resumed the interview of JENNINGS on the porch, SA McClenahan spoke with Mrs. JENNINGS inside the residence. Mrs. Jennings did not provide a statement on the matter.

SA Grey confirmed with JENNINGS if he understood the Miranda rights warning that SA Grey had read to him previously. JENNINGS stated that he understood. SA Grey then asked JENNINGS if, understanding those rights, he still wished to speak with the agents, to which JENNINGS replied, "Yes."

During the interview, JENNINGS told SA Grey that he had lied to the agents about his involvement in child pornography. JENNINGS stated the following: He used a Peer-to-Peer program called Limewire for the purposes of downloading and viewing child pornography. JENNINGS admitted that he had been using Peer-to-Peer software to intentionally and knowingly obtain child pornography for more than five years. He used search terms, like "PTHC," which knew meant "preteen hardcore" and age numbers, which would provide results of children pornography. He was mainly interested in images or videos of prepubescent girls engaged in sexual activity and used child pornography to masturbate. JENNINGS did not feel guilty about downloading and viewing child pornography.

JENNINGS knew that by using the Peer-to-Peer software he was sharing images of child pornography with other users on the Peer-to-Peer network. SA Grey showed JENNINGS still shots from the videos that were originally downloaded from JENNINGS and the subject of the search warrant affidavit. JENNINGS admitted that the images SA Grey showed him would be found on his computer, and acknowledged he had been responsible for distributing those images. When SA Grey asked JENNINGS about his understanding of the Peer-to-Peer network and how it worked, JENNINGS indicated he understood that he received images from the internet and that users of the Peer-to-Peer network were receiving images of child pornography from him.

When SA Grey asked JENNINGS how much child pornography he had, JENNINGS answered, "a lot." JENNINGS admitted that he had lied previously to SA Grey, and that he has another laptop and an external hard drive hidden in the Chrysler Sebring parked in the driveway that he had been driving earlier that day and claimed the contraband would all be found on the items in his Chrysler Sebring. When pressed further, JENNINGS stated that there might be some child pornography on some old computers located in a downstairs office in the residence. JENNINGS admitted responsibility for those computers and the images on them as well.

As the interview continued, JENNINGS asked what was going to happen to him. JENNINGS told SA Grey that he thought he had probably given the agents everything they need and that if he had a lawyer there, the lawyer would probably tell him to "shut the fuck up." But JENNINGS added that he was willing to help the agents and tell the agents what was needed to essentially speed the search process along. At no time did JENNINGS request an attorney. In fact, SA Grey reminded JENNINGS that he was under no obligation to speak with the agents and JENNINGS acknowledged that he understood. At the conclusion of the interview, SA Grey asked JENNINGS to have a seat inside the residence while the agents searched the premises.

During the search of the premises, agents seized a number of items from a variety of locations on the property to include: the main residence, a Chrysler Sebring convertible, and a large aircraft hangar. The seized items included computers, computer storage media, cameras, a book, a passport and various rounds of ammunition.

Agents searched the Chrysler Sebring convertible and discovered a Toshiba laptop and a Seagate external hard drive. TFA Francis Dufresne conducted a forensic preview search of both items. The forensic preview revealed that this laptop computer and the external hard drive contained hundreds of images and movies of child pornography. When TFA Dufresne showed SA Grey the results of the forensic preview on scene, SA Grey observed that one of the child pornography movie files recovered during the preview of the Toshiba laptop was one of the videos that was distributed from the JENNINGS residence to TFA Dan Ogden. This file, with file name "babyj-fuck me! ggggg.wmv" was the subject of the single source download from the JENNINGS residence IP address on August 22, 2012. The laptop and external hard drive found in the Chrysler Sebring were seized as evidence during the search warrant.

Towards the conclusion of the search warrant execution, SA Grey asked JENNINGS if he was willing to speak with SA Grey again. JENNINGS agreed and again exited the residence and spoke with SAs Grey and McClenahan on the front porch. SA Grey advised JENNINGS that he was still under no obligation to speak

with the agents and JENNINGS agreed that he had no problem speaking to agents. SA Grey advised JENNINGS that the agents had found a sizeable quantity of child pornography and asked how JENNINGS had hid it from his wife for so long. JENNINGS stated that he spends a lot of time at home while his wife is at work. JENNINGS stated that he would never take his laptop to look at child pornography in a public place. JENNINGS stated that he used his home for his child pornography activities since he was able to maintain privacy that way.

JENNINGS told SA Grey that he initially lied so that he could buy some time and get rid of evidence. He stated that his wife had no idea what was going on and that he was worried about how she was going to react and handle the situation.

The final forensic report established that the Seagate external hard drive, found in JENNINGS's vehicle contained 150 pictures and 2148 movies of visual depictions of minors engaging in sexually explicit conduct. The Toshiba laptop also found in JENNINGS's vehicle contained 275 pictures and 93 movies of visual depictions of minors engaging in sexually explicit conduct. The computer files that JENNINGS distributed to the agent were found in JENNINGS Toshiba laptop's shared folder.

The Western Digital external hard drive found in JENNINGS's home contained 1,068 pictures and 980 movies of visual depictions of minors engaging in sexually explicit conduct.

The defendant committed the offenses alleged in the indictment from the real property located at 2689 Spruce Creek, Port Orange, FL and did so at his home to hide such conduct from his wife and/or the public.

Respectfully submitted,

ROBERT E. O'NEILL
United States Attorney

By: *s/ Myrna Amelia Mesa*
Myrna Amelia Mesa
Special Assistant United States Attorney
USA No. 122
400 W. Washington Street, Suite 300
Orlando, Florida 32801
Telephone: (407) 648-7500
Facsimile: (407) 648-7643
E-mail: myrna.mesa@usdoj.gov

**U.S. v. BRUCE LEE JENNINGS** **Case No. 6:12-cr-261-Orl-28KRS**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: David A. Howard

*s/ Myrna Amelia Mesa*
Myrna Amelia Mesa
Special Assistant United States Attorney
USA No. 122
400 W. Washington Street, Suite 300
Orlando, Florida 32801
Telephone: (407) 648-7500
Facsimile: (407) 648-7643
E-mail: myrna.mesa@usdoj.gov