**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

    v.                                          Case No. 6:12-cr-261-Orl-28KRS

**BRUCE LEE JENNINGS**

**UNITED STATES' RESPONSE IN OPPOSITION TO PETITIONER'S
MOTION TO BE RECOGNIZED AS A "CRIME VICTIM"
PURSUANT TO TITLE 18, UNITED STATES CODE, SECTION 3771**

The United States of America, by Robert E. O'Neill, United States Attorney for the Middle District of Florida, and through the undersigned Special Assistant United States Attorney, states as follows:

**PROCEDURAL BACKGROUND**

On September 15, 2012, Homeland Security Investigations arrested Bruce Lee JENNINGS, the defendant, at his residence in Volusia County based on the federal criminal offenses, Distribution of Child Pornography and Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and(a)(5), respectively. Doc. 6-1. Magistrate Judge Kelly ordered him detained on September 17, 2012. Doc. 4. On October 10, 2012, a Grand Jury returned an Indictment, charging the defendant with Count One, Distribution of Child Pornography and Count Two, Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (a)(5), respectively.

Doc. 14. The United States sought the forfeiture of the defendant's interest in any property, real or personal, used or intended to be used to commit or to promote the commission of such offense, and included the real property located at Port Orange, FL 32128, *hereinafter,* the Property. Doc. 14. On October 19, 2012, the United States filed a Bill of Particulars and Notice Lis Pendens for the Property. Docs. 23 and 24.

On January 28, 2013, the defendant entered a change of plea to Counts One and Two of the Grand Jury Indictment. Doc. 44. On May 31, 2013, the defendant is scheduled to appear for sentencing before this Court. Doc. 51.

On February 15, 2013, the United States filed its Motion for Preliminary Order of Forfeiture. Doc. 53. This Court entered the Preliminary Order of Forfeiture on February 20, 2013, finding that the United States demonstrated a sufficient nexus between the defendant's distribution and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(b) and 2252A(a)(5)(b), and the subject property. Doc. 55. On April 19, 2013, the petitioner, Joanne Jennings, filed a petition for an ancillary hearing pursuant to 21 U.S.C. § 853(n) to adjudicate her interest, if any, in the subject property. Doc. 59. In response to her petition, the United States then moved this Court to allow discovery on the issues surrounding Joanne Jennings' alleged interest in the property before having a hearing on her petition for ancillary hearing as permitted by Federal Rule of Civil Procedure 32.2(c)(1)(B). Doc. 61. Magistrate Judge Spaulding granted the motion for discovery on April 23, 2013. Doc. 62.

Joanne Jennings, the petitioner in this case, now moves this Court to recognize her as a "crime victim," pursuant to the Crime Victims' Rights Act ("CVRA") and that as a "crime victim," she be entitled to restitution and/or to the Property as a whole.

The United States respectfully submits this memorandum of law opposing the petitioner's motion to be recognized as a "crime victim," pursuant to CVRA and receive restitution and/or the Property as a whole. The CVRA defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e). Applying that definition, courts have held that to qualify under the statute, a person must have been harmed directly and proximately by conduct underlying an element of the defendant's offense. The petitioner specifically describes her harm as potential harm, "i.e., "the loss of her property."[1] However, the harm is not directly and proximately caused by the defendant's conduct of distributing and possessing child pornography, and therefore, the petitioner is not entitled to receive restitution and/or the Property as a whole.

**STATEMENT OF FACTS**

On August 21, 2012, Task Force Agent (TFA) Daniel Ogden of the Brevard County Sheriff's Office in Rockledge, Florida was conducting investigations into the sharing of "Child Pornography" on the Ares Peer-to-Peer (P2P) file sharing network.

---

[1] On October 9, 2012, by and through a Quit Claim Deed, the defendant transferred his sole ownership in the Property to joint ownership with his wife, Joanne Jennings. The Quit Claim Deed was filed with Volusia County Clerk of Court on October 11, 2012.

TFA Ogden located a computer with IP address 184.42.12.26, which was online sharing files of child pornography and downloaded five movies from the IP address 184.42.12.26. After further investigation, TFA Ogden determined that the IP address 184.42.12.26 belonged to the defendant's residence, in Volusia County, FL.

Agents properly executed a federal search warrant at the defendant's residence, in Volusia County, FL. Just prior to the search of the premises at approximately 8:30 p.m., SA Grey, along with SA Ken McClenahan, conducted a knock and talk encounter with, and non-custodial recorded interview of, the defendant outside his residence. During this initial interview, the defendant denied using any kind of file sharing software and any intentional involvement in downloading or viewing images of child pornography.

After SA Grey and SA McClenahan advised the defendant and Mrs. Joanne Jennings, the petitioner, of their *Miranda* rights, they both acknowledged that they understood those rights. The petitioner invoked her right to remain silent. However, the defendant waived his *Miranda* rights and agreed to speak with the agents. The defendant explained that he did not want his wife involved; she was unaware of his activities; and he admitted that he was the one who had been downloading and viewing child pornography on the computers. The defendant wanted to protect his wife from any further embarrassment the investigation may cause.

During the interview, the defendant admitted the following about his involvement in child pornography: He used a Peer-to-Peer program called Limewire for the purposes of downloading and viewing child pornography for more than five

4

years. He used age numbers in conjunction with search terms, like "PTHC," which he knew meant "preteen hardcore," that provided results of children pornography. He was mainly interested in images or videos of prepubescent girls engaged in sexual activity and used child pornography to masturbate.

The defendant further explained that he knew that by using the Peer-to-Peer software he was sharing images of child pornography with other users on the Peer-to-Peer network; he received images from the Internet and that users of the Peer-to-Peer network were receiving images of child pornography from him.

SA Grey showed the defendant still shots from the videos that were originally downloaded from and the subject of the search warrant affidavit. The defendant admitted that those same images would be found on his computer, and acknowledged he had been responsible for distributing those images.

The defendant stated he accumulated "a lot" of child pornography, and identified a laptop and an external hard drive hidden in the Chrysler Sebring parked in the driveway and claimed the contraband would all be found on the items in his Chrysler Sebring. When pressed further, the defendant stated that there might be some child pornography on some old computers located in a downstairs office in the residence. The defendant admitted responsibility for those computers and the images on them as well.

During the search of the premises, agents seized a number of items from a various locations on the property to include the main residence, a Chrysler Sebring

5

convertible, and a large aircraft hangar.  The seized items included computers, electronic storage media, cameras, a book, passport and various rounds of ammunition.

TFA Francis Dufresne conducted a forensic preview of the Toshiba laptop and a Seagate external hard drive found in the Chrysler Sebring.  The forensic preview revealed that this laptop computer and the external hard drive contained hundreds of images and movies of child pornography.  Accordingly, the laptop and external hard drive were seized as evidence during the search warrant.

Towards the conclusion of the search warrant execution, SA Grey asked the defendant if he was willing to speak again and advised that he was still under no obligation to speak with the agents.  The defendant agreed that he had no problem speaking again.  After informing the defendant that the agents found a sizeable quantity of child pornography, SA Grey asked how the defendant had hid it from his wife for so long.  The defendant replied that he spends most of his time at home while his wife is at work.  The defendant stated that he would never take his laptop to look at child pornography in a public place.  But he admitted he used his home for his child pornography activities since he was able to maintain privacy that way.  The defendant also admitted that he initially lied so that he could buy some time and get rid of evidence.

The final forensic report established that the Seagate external hard drive, found in the defendant's vehicle contained 150 pictures and 2148 movies of visual

depictions of minors engaging in sexually explicit conduct. The Toshiba laptop, also found in the defendant's vehicle, contained 275 pictures and 93 movies of visual depictions of minors engaging in sexually explicit conduct. The computer files that the defendant distributed to the agent were found in the defendant Toshiba laptop's shared folder. The Western Digital external hard drive found in the residence contained 1,068 pictures and 980 movies of child pornography. After converting the total number of movies (3221) and adding that number to the total number of images (1493), the defendant's offense involved more than 243,000 visual depictions of minors engaging in sexually explicit conduct. PSR ¶ 44.

For the Court's consideration in sentencing the defendant, some crime victims have submitted statements detailing the impact of the perpetual exploitation of their sexual abuse in the possession and distribution of child pornography images. PSR ¶¶ 31-33.

## LAW AND ANALYSIS

The CVRA, enacted in 2004, provides "crime victims" with an expansive set of rights in the criminal process. 18 U.S.C. § 3771. Among other things, the statute provides the right (1) to be reasonably protected from the accused; (2) to notice of public proceedings involving the accused; (3) not to be excluded from such public proceedings; (4) to be heard at any proceedings involving release, plea, sentencing, or parole; (5) to confer with the prosecutors; (6) to full and timely restitution; (7) to proceedings without unreasonable delay; and (8) to be treated with fairness, dignity,

7

and respect for privacy. 18 U.S.C. § 3771(a)(1)-(8). "In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded" these rights. 18 U.S.C. § 3771(b); *see In re W.R. Huff Asset Management Co., LLC,* 409 F.3d 555, 561 (2d Cir. 2005); *see also Kenna v. U.S. Dist. Court for C.D.Cal.,* 435 F.3d 1011, 1013 (9th Cir. 2006) (noting that the CVRA "allows both the government and the victims to enforce" the rights set forth therein).

The CVRA extends these rights only to people who qualify as "crime victims." A "crime victim" is defined by the statute, in turn, as "a person directly and proximately harmed as a result of the commission of a Federal offense."[2] 18 U.S.C. § 3771(e). To determine whether a person is a crime victim, therefore, one must first "identify the behavior constituting 'commission of a Federal offense.'" *United States v. Stewart*, 552 F.3d 1285, 1288 (11th Cir. 2008). Then, one must "identify the direct and proximate effects of that behavior on parties other than the United States. If the criminal behavior causes a party direct and proximate harmful effects, the party is a victim under the CVRA." *Id.*

In conducting this analysis, courts have generally limited their inquiry to "conduct underlying an element of the offense." *United States v. Sharp*, 463 F. Supp. 2d 556, 563 (E.D. Va. 2006) (internal quotation marks and citation omitted); *see also Stewart*, 552 F.3d at 1288. *But see United States v. Turner*, 367 F. Supp.

---

[3] Title 18, United States Code, Section 2259(c) defines "victim" as an individual harmed as a result of a commission of a crime under chapter 110, Sexual Exploitation of Children. Section 2259(b)(3)(F) requires restitution for "losses suffered by the victim as a proximate result of the offense." Accordingly, the same analysis for "crime victim" under the CVRA would apply to "victim" status and restitution pursuant to Section 2259.

8

2d 319, 326 (E.D.N.Y. 2005) (stating, in dictum, that "[w]hile the offense charged against a defendant can serve as a basis for identifying a 'crime victim,' . . . the class of victims with statutory rights may well be broader"). The limitation of the inquiry flows from the language of the CVRA itself because the statute speaks of the commission of "a Federal offense." As the Supreme Court explained in interpreting similar language in an earlier version of a related statute, "Had Congress intended to permit a victim to recover for losses stemming from all conduct attributable to the defendant, including conduct related to the offense of conviction, Congress would likely have chosen language other than 'the offense,' which refers without question to the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 418 (1990).

Accordingly, the Court should analyze the petitioner's status as a "crime victim" within context of the defendant's criminal conduct underlying the offenses of Distribution and Possession of Child Pornography.[3] The Court should then review whether the petitioner suffered "harm" that was directly and proximately caused by the defendant's conduct as described in the elements of the offenses.

---

[2] The elements of the offense for Distribution of Child Pornography require that the defendant knowingly distributed items of child pornography; the item(s) of child pornography had been transported in interstate commerce, including by computer over the internet; and when the defendant distributed the items, the defendant believed the items were child pornography. The elements of the offense for Possession of Child Pornography require that the defendant knowingly possessed an item of child pornography; the item of child pornography had been transported in interstate commerce, including by computer over the internet; and when the defendant possessed the items, the defendant believed the items were child pornography.

The Eleventh Circuit has addressed the definition of the "direct and proximate" phrase. In *United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir. 2007), the Court stated,

> We have never defined the phrase "directly and proximately," but we agree with the definitions that our sister circuits have adopted. "[T]he government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal connection between the conduct and the loss is not too attenuated (either factually or temporally)." United States v. Cutter, 313, F.3d 1, 7 (1st Cir. 2002) (internal quotation marks omitted). "Defendant's conduct need not be the sole cause of loss, but any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct. The causal chain may not extend so far, in terms of facts or the time span as to become unreasonable." United States v. Gamma Tech Indus., Inc., 265 F.3d 917, 928 (9th Cir. 2001) (citations omitted).[4]

Two general principles can be discerned in the definition of the "direct and proximate" phrase. Firstly, the alleged harm must be a direct consequence of the crime; that is, the harm must generally be a "but for" consequence of the conduct that constitutes the crime. Second, the causal connection between the harm and the offense must be proximate. This showing ordinarily requires that the alleged harm must have been reasonably foreseeable and not too attenuated, and any intervening causal factors are related to the defendant's conduct. If both conditions

---

[4]Although the Court's decision was in the context of restitution under the Mandatory Victim Restitution Act (18 U.S.C. § 3663A(a)(2)), the United States submits that the Court's analysis applies under the CVRA because the definition for a "crime victim" pursuant to the Mandatory Victim Restitution Act uses the "direct and proximate" language.

are met, the person at issue meets the CVRA harm element.  The harm can be physical, emotional, or pecuniary.

The Eleventh Circuit also has clarified that the victim does not need to be identified in the indictment or to be an individual "whose identity constitutes an element of the offense."  *United States v. Stewart*, 552 F.3d 1285, 1289 (11th Cir. 2008).  Instead, a party "may qualify as a victim, even though it may not have been the target of the crime, as long as it suffers harm as a result of the crime's commission."  *Id.*

In this case, the defendant possessed thousands of images and movies of child pornography and distributed the images and movies to others using a Peer to Peer software program.  As a direct and proximate result of his federal offenses, a number of children describe in great detail the impact of sexual abuse exploited perpetually on the Internet.  Clearly, "possessing child pornography . . . fuels the demand for the creation and distribution of child pornography." *United States v. Daniels*, 541 F.3d 915, 924 (9th Cir. 2008); see also *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005)  ("[P]ossession of child pornography is not a victimless crime.  A child somewhere was used to produce the images downloaded by [the defendant], in large part, because individuals like [him] exist to download the images.").

The distribution of child pornography feeds an industry that causes untold physiological, emotional, and mental trauma to the child victims.  *Osborne v. Ohio*, 495 U.S. 103, 109 (1990).  The greater the demand for child pornography, the more

children will be victimized to create it. *United States v. Pugh*, 515 F.3d 1179, 1194-95. Accordingly, no one would dispute that the children in the images and videos suffered harm as a direct and proximate result of the defendant's conduct underlying the federal offenses, and therefore, the children are "crime victims."

Contrarily, the petitioner does not describe harm that generally is a "but for" consequence of the defendant's conduct that constitutes the crime. The petitioner claims she "could *potentially* suffer harm, (i.e., the loss of her property)," but fails to illustrate how "potentially" losing the Property is a harm, which is directly and proximately caused by the defendant's underlying conduct at the time he committed the offenses. While it is certain that the defendant's criminal conduct caused second and third order effects after the commission of the crime, the causal connection between the defendant's conduct and the petitioner's harm is attenuated at best, especially when compared to the child "crime victims" in this case.

Moreover, it appears that the petitioner's claim of harm does not attach until such time the Court orders the forfeiture of the Property. Consequently, the petitioner's claim of harm has a causal link to the defendant's punishment, and again, not a direct and proximate link to defendant's criminal conduct.

The petitioner further asserts that the United States is attempting to take the petitioner's interest in the Property without compensation or restitution. Doc. 60 at 2. However, the United States' has statutory authority to seek forfeiture of property used to facilitate a crime. 18 U.S.C. § 2253. Title 21, United States Code, Section 853 provides an ancillary proceeding where third party claimants can assert their

interest in forfeited property. The petitioner has asserted her right to be considered a third party claimant in the defendant's forfeiture proceedings. Doc. 59.

Indeed, the ancillary proceeding is the exclusive avenue for adjudication of third party interests in property subject to forfeiture. *See United States v. Davenport*, 668 F.3d 1316, 1320 (11th Cir. 2012) ("An ancillary proceeding constitutes the sole means by which a third-party claimant can establish entitlement to return of forfeited property."); *United States v. Cone,* 627 F.3d 1356, 1358 (11th Cir. 2010) (the procedures outlined in 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2 confer limited rights upon non-party petitioners seeking to assert interests in property subject to forfeiture to participate only in the ancillary forfeiture proceeding, not in the criminal case); *United States v. Kramer*, 912 F.2d 1257, 1260 (11th Cir. 1990) ("a third party, who claims an interest in property forfeited . . . in a criminal proceeding, has the sole remedy of petitioning the district court for a hearing [under § 853(n)]")*.* Accordingly, the only way in which the Court can address the petitioner's claims to the Property is through a hearing afforded under 21 U.S.C. § 853(n)*. See Libretti v. United States*, 516 U.S. 29, 44 (1995) ([T]hird-party claimants can establish their entitlement to return of the [forfeited] assets only by means of the hearing afforded under 21 U.S.C. § 853(n)).

**CONCLUSION**

While the United States is sympathetic to the collateral effect(s) this crime has had and continues to have on the family of the defendant, to include the petitioner, the petitioner's claim of harm, the potential loss of the Property, is not

directly and proximately a result of the defendant's underlying conduct during the commission of his federal offenses. The United States asserts the petitioner is not a "crime victim" and cannot seek to be awarded restitution and/or the Property through restitution proceedings. Wherefore, the United States respectfully requests that the petitioner's motion be denied.

        Respectfully submitted,

        ROBERT E. O'NEILL
        United States Attorney

By:    *s/ Myrna Amelia Mesa*
      Myrna Amelia Mesa
      Special Assistant United States Attorney
      USA No. 122
      400 W. Washington Street, Suite 3100
      Orlando, Florida  32801
      Telephone:   (407) 648-7500
      Facsimilie:   (407) 648-7643
      E-mail:         myrna.mesa@usdoj.gov

U.S. v. BRUCE LEE JENNINGS          Case No. 6:12-cr-261-Orl-28KRS

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

David A. Howard, defendant's counsel

Erum S. Kistemaker, petitioner's counsel

<i>s/ Myrna Amelia Mesa</i><br>
Myrna Amelia Mesa<br>
Special Assistant United States Attorney<br>
USA No. 122<br>
400 W. Washington Street, Suite 3100<br>
Orlando, Florida 32801<br>
Telephone: (407) 648-7500<br>
Facsimile: (407) 648-7643<br>
E-mail: myrna.mesa@usdoj.gov