# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**UNITED STATES OF AMERICA**

    v.                           Case No. 6:12-cr-261-Orl-28KRS

**BRUCE LEE JENNINGS**

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Special Assistant United States Attorney, files its sentencing memorandum in this case, and requests the Court to impose a sentence within the Sentencing Guidelines ("guidelines") range as set forth in the Presentence Report (PSR) prepared by the United States Probation Office. A guidelines sentence in this case will achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a) because it will reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect children from further crimes of the defendant.

## BACKGROUND

On August 21, 2012, Task Force Agent (TFA) Daniel Ogden of the Brevard County Sheriff's Office in Rockledge, Florida was conducting investigations into the sharing of "Child Pornography" on the Ares Peer-to-Peer

(P2P) file sharing network. TFA Ogden located a computer with IP address 184.42.12.26, which was online sharing files of child pornography. After further investigation, TFA Ogden determined that the IP address 184.42.12.26 belonged to the defendant's residence, in Volusia County, FL.

Agents properly executed a federal search warrant at the defendant's residence, in Volusia County, FL. Just prior to the search of the premises at approximately 8:30 p.m., SA Grey, along with SA Ken McClenahan conducted a knock and talk encounter with, and non-custodial recorded interview of, the defendant outside his residence. During this initial interview, the defendant denied using any kind of file sharing software and any intentional involvement in downloading or viewing images of child pornography.

After SA Grey and SA McClenahan advised the defendant and Mrs. Joanne Jennings of their Miranda rights, they both acknowledged that they understood those rights. Mrs. Jennings invoked her right to remain silent. However, the defendant waived his Miranda rights and agreed to speak with the agents. The defendant explained that he did not want his wife involved; she was unaware of his activities; and he admitted that he was the one who had been downloading and viewing child pornography on the computers. The defendant wanted to protect his wife from any further embarrassment the investigation may cause.

During the interview, the defendant admitted the following about his involvement in child pornography. He used a Peer-to-Peer program called Limewire for the purposes of downloading and viewing child pornography for more than five years. He used age numbers in conjunction with search terms, like "PTHC," which he knew meant "preteen hardcore," which would provide results of children pornography. He was mainly interested in images or videos of prepubescent girls engaged in sexual activity and used child pornography to masturbate.

The defendant further explained that he knew that by using the Peer-to-Peer software he was sharing images of child pornography with other users on the Peer-to-Peer network; he received images from the Internet and that users of the Peer-to-Peer network were receiving images of child pornography from him.

SA Grey showed the defendant still shots from the videos that were originally downloaded from and the subject of the search warrant affidavit. The defendant admitted that those same images would be found on his computer, and acknowledged he had been responsible for distributing those images.

The defendant stated he accumulated "a lot" of child pornography, and identified a laptop and an external hard drive hidden in the Chrysler Sebring parked in the driveway that he had been driving earlier that day and claimed the contraband would all be found on the items in his Chrysler Sebring. When

pressed further, the defendant stated that there might be some child pornography on some old computers located in a downstairs office in the residence. The defendant admitted responsibility for those computers and the images on them as well.

During the search of the premises, agents seized a number of items from various locations on the property to include: the main residence, a Chrysler Sebring convertible, and a large aircraft hangar. The seized items included computers, computer storage media, cameras, a book, a passport and various rounds of ammunition.

TFA Francis Dufresne conducted a forensic preview of a Toshiba laptop and a Seagate external hard drive found in the vehicle. The forensic preview revealed that this laptop computer and the external hard drive contained hundreds of images and movies of child pornography. The laptop and external hard drive found in the Chrysler Sebring were seized as evidence during the search warrant.

Towards the conclusion of the search warrant execution, SA Grey asked the defendant if he was willing to speak again and advised that he was still under no obligation to speak with the agents. The defendant agreed that he had no problem speaking again. After informing the defendant that the agents found a sizeable quantity of child pornography, SA Grey asked how the defendant had hid it from his wife for so long. The defendant replied that he spends most of his

time at home while his wife is at work.  The defendant stated that he would never take his laptop to look at child pornography in a public place.  But the defendant used his home for his child pornography activities since he was able to maintain privacy that way.  The defendant also admitted that he initially lied so that he could buy some time and get rid of evidence.

The final forensic report established that the Seagate external hard drive, found in the defendant's vehicle, contained 150 pictures and 2148 movies of visual depictions of minors engaging in sexually explicit conduct.  The Toshiba laptop, also found in the defendant's vehicle, contained 275 pictures and 93 movies of visual depictions of minors engaging in sexually explicit conduct.  The computer files that the defendant distributed to the agent were found in the defendant's Toshiba laptop's shared folder.  The Western Digital external hard drive found in the residence contained 1,068 pictures and 980 movies of child pornography.  After converting the total number of movies (3221) and adding that number to the total number of images (1493), the defendant's offense involved more than 243,000 visual depictions of minors engaging in sexually explicit conduct.  PSR ¶ 44.

For the Court's consideration in sentencing, the crime victims have submitted statements detailing the impact of their sexual abuse in the possession and distribution of child pornography images.  PSR ¶¶ 31-33.

**ARGUMENT**

1. The Nature and Circumstances of the Offense

The nature of JENNINGS's offenses are extremely serious and militates in favor of a guidelines sentence. See 18 U.S.C. § 3553(a)(1). JENNINGS used a Peer to Peer file directory to download and receive child pornography. He shared some of the most despicable movies, which included adult males engaging in sexual intercourse with young girls, for others to download as well for others to download as well.

JENNINGS hoarded these images and movies, possessing a total of 3221 movies and 1493 images, depicting the sexual abuse and exploitation of children. The total number of images translate in excess of 243,000 appalling images, which depict in perpetuity unerasable moments of horror for these children. In order to maintain his privacy, he used his main residence, his vehicle, and a large aircraft hangar to view these images and movies for his own sexual gratification. Doc. 42. A substantial sentence is warranted to adequately punish JENNINGS for his crime and to protect children from his future conduct.

Certainly, the public and the court system are aware that "child sex crimes are among the most egregious and despicable of societal and criminal offenses." United States v. Sarras, 575 F.3d 1191, 1220 (11th Cir. 2009) (court affirmed as reasonable a 100-year-sentence for a first offender who sexually abused a 13-year-old girl and photographed the abuse). The distribution of child pornography

feeds an industry that causes untold physiological, emotional, and mental trauma to the child victims. Osborne v. Ohio, 495 U.S. 103, 109 (1990). Deterrence is "particularly compelling in the child pornography context" because the greater demand for it, the more children will be victimized to create it. United States v. Pugh, 515 F.3d 1179, 1194-95. Congress "repeatedly has stressed the terrible harm child pornography inflicts on its victims," and has repeatedly increased the penalties for child pornography offenses. Pugh, 515 F.3d at 1195-98 (citing legislative history of federal statutes criminalizing child pornography offense).

JENNINGS amassed hundreds of thousands of videos and images of child pornography, many of which projects on a screen, the sexual abuse of children under the age of twelve and include images of rape and other sadistic and masochistic violence. The National Center for Missing and Exploited Children has identified child victims from the Cindy, Dalmatians, JanFeb, Jessica, SpongeB, Tara, Vicky, Hawaiian Purple, Jenny, Leopardtight, Lighthouse, Marineland and Sara series.

In a statement submitted to the court and defense counsel, a child victim, now a teenager, articulates: "I am a victim of the worst kind of exploitation, child porn. Unlike other forms of child exploitation, this one is never ending." JENNINGS's conduct contributed to the suffering and everlasting emotional damage of these child victims.

Each time child pornography is reproduced, downloaded, or viewed, it causes the victimization of the child to continue indefinitely. The offenders who access images of children being sexually abused enhance the demand for such items, thereby perpetuating the cycle of sexual abuse and victimization. As further described by a mother of one of the victims of JENNINGS's offense in another statement submitted to the court and defense counsel:

> My daughter was raped and sexually abused in so many horrible ways, as a child, by her biological father. He also videotaped her abuse, as he ravaged, raped and pillaged her 10 year old body. This sick man shared these repulsive pictures and videos of her on the internet for perverts like himself, to see....Yes, the memories and trauma of her abuse still haunt her, and our family, but now there is a new abuser. The new abusers are the sick individuals who download her pictures....At the cost of her dignity, modesty, innocence, people viewing those images of her, are furthering the terrible addiction for child pornography for themselves and others they pass it on to....Making, viewing, and downloading child pornography is wrong...and not a victimless crime.

Congress and the courts have recognized that JENNINGS's crime is serious and, in his particular case, he compounded the seriousness by not only possessing the images, thereby fueling the demand for such material, but also by hoarding those images. JENNINGS contributed to the repeated victimization of these children. A guidelines sentence adequately reflects the seriousness of JENNINGS's offense, and there is nothing about the seriousness of the offense, which warrants a variance. 18 U.S.C. § 3553(a)(2).

2. The History and Characteristics of the Defendant

Similarly, JENNINGS's history and characteristics militate in favor of a guidelines sentence. 18 U.S.C. § 3553(a)(1). JENNINGS's is a pedophile, who has been collecting, hoarding, fantasizing, and masturbating to images of child pornography.[1] Despite his awareness of the illegality of his actions, JENNINGS through his own admissions consumed "a lot" of images of child pornography sexually exploited children. JENNINGS further admitted to masturbating while viewing his collection. JENNINGS's conduct was reprehensible and without regard to consequence or impact. He sought out images in a Peer to Peer shared folder from those who shared his same dangerous sexual predilection for child pornography image or movie files. Thus, the history and characteristics of the defendant also weigh in favor of a guidelines sentence.

3. Just Punishment, Adequate Deterrence, Respect for the Law, and Protection of the Public

A guidelines sentence meets the sentencing goals of adequate deterrence, respect for the law, protection of the public and just punishment in this case. Deterrence is "one of the four purposes of sentencing identified by

---

[1] Pursuant to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, a pedophile is an individual who fantasizes about, is sexually aroused by, or experiences sexual urges toward prepubescent children for a period of at least 6 months. DSM IV at 566-67. See also, United States v. Irey, 612 F.3d 1160, 1200, n.27 (11th Cir. 2010) ("Under the DSM IV TR, pedophilia is a paraphilia and an axis I disorder.") See also, Ryan C.W. Hall & Richard C.W. Hall, A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues, 82 Mayo Clinic Proc. 457, 461 (2007).

9

Congress in Section 3553(a)." Pugh, 515 F.3d at 1194 (citing S. Rep. No. 98-225, at 75-76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259). And, as noted above, the Eleventh Circuit has recognized that deterrence is "particularly compelling in the child pornography context."

There is no doubt that JENNINGS needs treatment. He not only admitted to collecting and sharing videos of child pornography, he also admitted to receiving sexual gratification from the sexual abuse of these children. A sentence within the guidelines range will assure JENNINGS's lengthy separation from children and child pornography. It will give JENNINGS an opportunity for reflection and treatment in a structured setting separated from the internet and images and movies of young children sexually exploited by adults. See 18 U.S.C. § 3553(a)(2).

    4.    A Guidelines Sentence Reflects Pertinent Guidelines Policy Statements

A guidelines sentence also reflects the pertinent policy statements in the guidelines and the Sentencing Commission's intent that sex crimes under Chapter 110 be treated differently than other types of crimes. 18 U.S.C. § 3553(a)(5). For example, departures from the voluntary Sentencing Guidelines in a child sex case (including the possession and distribution of child pornography, violations under Chapter 110), are governed by USSG § 5K2.0(b). That section provides, referring to 18 U.S.C. § 3553(b)(2)(A)(ii), that the sentencing court may only impose a sentence below the range established by

the applicable guidelines if the court finds that there exists a mitigating circumstance of a kind, or to a degree, that (1) has been affirmatively and specifically identified as a permissible ground for a downward departure in the Sentencing Guidelines or policy statements contained therein; (2) has not adequately been taken into consideration by the Sentencing Commission in formulating the guidelines; and (3) should result in a sentence different from that described. The provision then states:

> The grounds enumerated in this Part K of Chapter Five are the sole grounds that have been affirmatively and specifically identified as a permissible ground of downward departure in these sentencing guidelines and policy statements. Thus, notwithstanding any other reference to authority to depart downward elsewhere in this Sentencing Manual, a ground of downward departure has not been affirmatively and specifically identified as a permissible ground of downward departure within the meaning of section 3553(b)(2) unless it is expressly enumerated in this Part K as a ground upon which a downward departure may be granted.

The commentary to § 5K2.0, n.4(B)(I), states that the standard for a downward departure in child crimes and sexual offenses differs from the standard from other departures. The basis for such a downward departure should be affirmatively and specifically identified as a ground for departure under Chapter 5, Part K.

The United States recognizes that section 3553(b)(2)(ii) is no longer mandatory in light of the holding of the United States Supreme Court in <u>United States v. Booker</u>, 543 U.S. 220 (2005). However, this Court should give great

11

weight to the findings of Congress in this regard, indicating that departures should be extremely rare in child sex crime cases. Indeed, the Sentencing Commission has made it clear that child sex crimes under Chapter 110 are to be treated differently and more severely than other types of crimes. See §5K2.13 (may not depart based on diminished capacity); §5K2.20 (may not depart based on aberrant behavior); §5H1.6 (family ties and responsibilities are not relevant).

For the foregoing reasons, the United States respectfully requests the Court to sentence JENNINGS to a term of imprisonment within the guidelines range followed by a life term of supervised release. In light of the serious nature of the offense, JENNINGS's personal characteristics, the need for the protection of children, just punishment, deterrence, and the need to promote respect for the law, a guidelines sentence is reasonable.

Respectfully submitted,

ROBERT E. O'NEILL
United States Attorney

By: *s/ Myrna Amelia Mesa*
Myrna Amelia Mesa
Special Assistant United States Attorney
USA No. 122
400 W. Washington Street, Suite 3100
Orlando, Florida  32801
Telephone:  (407) 648-7500
Facsimile:   (407) 648-7643
E-mail:        myrna.mesa@usdoj.gov

**U.S. v. Bruce Lee JENNINGS**  **CASE NO. 6:12-cr-261-Orl-28KRS**

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    David A. Howard

    *s/ Myrna Amelia Mesa*
    Myrna Amelia Mesa
    Special Assistant United States Attorney
    USA No. 122
    400 W. Washington Street, Suite 3100
    Orlando, Florida  32801
    Telephone:  (407) 648-7500
    Facsimile:  (407) 648-7643
    E-mail:  myrna.mesa@usdoj.gov