UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:12-cr-00261-JA-KRS-1

UNITED STATES OF AMERICA

v.

BRUCE LEE JENNINGS

_____/

**DEFENDANT'S CORRECTED[1] MOTION FOR DOWNWARD
DEPARTURE AND DOWNWARD VARIANCE**

DEFENDANT, BRUCE LEE JENNINGS, (Jennings), through counsel, respectfully moves the Court for a downward departure and a downward variance from his prescribed Guidelines range. He moves for a downward departure on the grounds that the nature of his offenses will make him particularly susceptible to abuse in prison which, coupled with his relatively advanced age and vulnerability to such abuse, will result in his term of incarceration being more onerous than that experienced by most other federal inmates. Jennings also moves for a downward variance on the grounds that: (1) as currently constituted, the Sentencing Guidelines for child pornography offenses call for excessive punishment and, as applied to Jennings, the prescribed sentence is more than necessary to meet the sentencing interests outlined in 18 U.S.C. § 3553, and is therefore substantively unreasonable; and (2) the financial penalty which Jennings will sustain as part of his punishment is so substantial as to warrant an offset by way of a reduction of his prison term.

_____

[1]Undersigned respectfully submits this corrected version of Jennings' departure motion to correct scrivener's errors in the original which were distracting. No substantive changes whatever were made to Jennings' argument and no additional law cited. The version of the motion which was filed on May 16, 2013, was not properly proof read.

1.      On January 28, 2013, Jennings plead guilty to both counts of an indictment charging him with distribution and possession of child pornography.  He plead openly to the indictment without a plea agreement.

2.      He is subject to a 5-year minimum mandatory term of imprisonment pursuant to 18 U.S.C. § 2252(b)(1).  *See* Pre-sentence Investigation Report, (PSI), at par. 81.

3.      The PSI calculates that Jennings' Total Guidelines Offense Level is 34, with a Criminal History Category of I, resulting in a Guidelines imprisonment range of 151 to 188 months.  Jennings does not object to the accuracy of that computation.[2]

4.      Jennings is contrite and accepts full responsibility for the crimes he committed.

5.      However, notwithstanding the seriousness of his offenses, Jennings respectfully submits that the sentence called for by the Guidelines is excessive and more than necessary to serve the punitive, protective, deterrent and rehabilitative interests that the circumstances of his case present.

## ARGUMENT AND MEMORANDUM OF LAW

<u>A Downward Departure is Warranted Because of the Combination
of Jennings' Susceptibility to Abuse in Prison, Advanced Age and
the More Onerous Conditions of Incarceration that will Result</u>

Jennings moves for a downward departure from his prescribed Guidelines range on the grounds that the nature of his offenses makes him particularly susceptible to abuse

---

[2]On April 16, 2013, Jennings objected to the 4-level, § 2G2.2(b)(4) enhancement. That objection is hereby withdrawn.  The remaining objections concern whether departures are appropriate and they are therefore addressed in this sentencing memorandum.

in prison, his relatively advanced age will make him particularly vulnerable to such abuse and both factors together will also likely result in his being placed in isolated confinement and thus having to endure a more onerous experience behind bars than that experienced by most other inmates.

Susceptibility to abuse in prison is a recognized ground for downward departure. *Koon v. U.S.,* 518 U.S. 81 (1996). The defendants in *Koon* were the police officers who had been convicted in the infamous Rodney King case. The District Court found that the widespread publicity and emotional outrage surrounding the case made the defendants particularly likely to be targets of abuse during their incarceration. In affirming the departure, the Supreme Court held that "[t]he District Court's conclusion that this factor made the case unusual is just the sort of determination that must be accorded deference by the appellate courts." *Id.,* at 111-12.

It is also common knowledge that persons who have been convicted of sex offenses against children invariably fall prey to the moral outrage of fellow inmates and that such outrage manifests in the form of violent physical abuse. In recognition of that truth, the Ninth Circuit Court of Appeals, in *U.S. v. Parish,* 308 F.3d 1025 (9th Cir. 2002), affirmed the district court's downward departure in a child pornography case on the ground that the defendant "was susceptible to abuse in prison because of a combination of factors [including] the nature of the offense." *Parish*, at 1031.

Additionally, Jennings is 64 years old. Nowadays, 64 is not considered old for most purposes, but it is a relatively advanced age for one to begin one's first stint in prison. Also,

at 64 years old, Jennings will be at a decided disadvantage if confronted by other inmates with the threat of being physically attacked. As such, Jennings lives in constant fear of the virtual inevitability of being physically attacked once designated to a prison facility, and the stress of that persistent threat further amplifies the psychological toll of his incarceration.

It is customary for persons convicted of offenses such as child pornography to be designated to some form of sequestered confinement in an attempt to protect them from the threat of physical harm at the hands of fellow inmates. However, not only do such measures not address the threat of harm entirely, but serving one's time in relative isolation is a more difficult experience than most other inmates have to endure. While Jennings is to blame for this complication to the extent that it is a consequence of the nature of the offenses he committed, the risk of harm and prospect of isolated confinement still amount to an atypically oppressive brand of incarceration with which he will be faced and thus a more difficult experience than that of the average inmate. In combination, these factors constitute an unusual circumstance which takes Jennings' case outside the heartland of circumstances contemplated by the Guidelines and thus warrants a downward departure. Jennings therefore moves the Court for a downward departure on these grounds.

A Variance is Warranted Because the Sentencing Guidelines
for Child Pornography Offenses call for Excessive Punishment

The Guidelines provision applicable to child pornography offenses is in need of an overhaul. Recently, the United States Sentencing Commission issued a report of "a multi-year process in which [it] examined cases of offenders sentenced under the federal sentencing guidelines and corresponding penal statutes concerning child pornography

offenses." *See* Report to Congress: Federal Child Pornography Offenses, United States Sentencing Commission, (December 2012), at p. i. "The purpose of [the] report is to contribute to the ongoing assessment by Congress and the various stakeholders in the federal criminal justice system regarding how federal child pornography offenders are [*inter alia]* prosecuted [and] sentenced." *Id.*

The relevant findings and conclusions reflected in the report include the observation that "there is a growing belief among many interested parties that the existing sentencing scheme in non-production cases fails to distinguish adequately among offenders based on degree of culpability and dangerousness." *Id.,* at p. 331. Further, the report concludes that "[t]he current guideline produces overly severe sentencing ranges for some offenders ... [and that a] revised guideline that more fully accounts for ... the full range of an offender's collecting behavior, the degree of his involvement in a child pornography community, and any history of sexually dangerous behavior – would better promote proportionate sentences and reflect the statutory purposes of sentencing." *Id.*

The Sentencing Commission could not have been more unequivocal and explicit in declaring that the child pornography Guidelines provisions need to be revised. And Jennings falls squarely within the group of offenders who the Commission warned are being unfairly treated by being exposed to "overly severe sentencing ranges". He has no history of sexually dangerous behavior, he is not a producer of child pornography and he has no involvement in the child pornography community, aside from the passive act of distribution associated with use of peer-to-peer software.

This is not the first time that the Sentencing Commission has cried foul with respect to the child pornography Guidelines.  In *U.S. v. Henderson*, 649 F.3d 955 (9th Cir. 2010), the Ninth Circuit Court of Appeals took great pains to recounted the history of the child pornography Guidelines.  The following excerpts from that brief dissertation speak for themselves.

> "Much like policymaking in the area of drug trafficking, Congress has used a mix of mandatory minimum penalty increases and directives to the Commission to change sentencing policy for sex offenses." U.S. Sentencing Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 72 (2004) (" *Fifteen–Year Assessment* ").

*Henderson,* at 959.

> In its report to Congress, the Commission explained that its analysis supported an enhancement for use of a computer to solicit participation in production of child pornography, but otherwise criticized the two-level computer enhancement because it failed to distinguish serious commercial distributors from more run-of-the-mill users. U.S. Sentencing Comm'n, *Sex Offenses Against Children: Findings and Recommendations Regarding Federal Penalties* 25–30, 37–38 (1996).

*Id.*, at 961.

> [T]he child pornography Guidelines have been substantively revised nine times during their 23 years of existence. U.S. Sentencing Comm'n, *The History of the Child Pornography Guidelines*, at 54 (2009) (" *Child Porn. History Rep't* "). Most of the revisions were Congressionally-mandated and not the result of an empirical study.

*Id.,* at 962.

> As the Commission itself has explained, "The frequent mandatory minimum legislation and specific directives to the Commission to amend the [G]uidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress." *Fifteen–Year Assessment* at 73.

*Id.*

> The Commission has also noted that "[s]entencing courts have ... expressed comment on the perceived severity of the child pornography [G]uidelines through increased below-guidelines variance and downward departure rates." *Child Porn. History Rep't* at 54.

*Id.*

The Commission therefore has established a review of the child

pornography Guidelines as one of its priorities. *Id.*

*Id.*

The trend of below-Guidelines sentences to which the quoted study in

*Henderson* refers, actually exists. There has been an identifiable trend toward mitigating

sentences in child pornography cases, and the high rate of below-range sentences in child

pornography cases does not reflect a disregard for public safety or a casual rejection of the

guidelines generally. Judges approach these cases with great seriousness, as shown by

the numerous written decisions carefully explaining the problems with the child pornography

Guidelines.[3] The truth of the matter is that many judges and prosecutors recognize that the

guidelines for most child pornography cases are too high and that they fail to differentiate

between more and less serious offenses and offenders. The following numbers show a

clear, unmistakable and telling trend toward recognizing that the child pornography guidelines

are too onerous.

_____

[3] *See, e.g., United States v. Veiermann,* 599 F.Supp.2d 1087 (N.D. Iowa Feb. 24, 2009);
*United States v. Burns,* Slip op., 2009 WL 3617448 (N.D. Ill, 2009); *United States v. Riley,* 655
F. Supp. 2d 1298 (S.D. Fla. 2009); *United States v. Phinney,* 599 F. Supp. 2d 1037(E.D. Wis.
2009; *United States v. Grober,* 595 F. Supp. 2d 382 (D. N.J. 2008); *United States v. Stern,* 590
F. Supp. 2d 945 (N.D.Ohio 2008); *united States v. Johnson,* 588 F. Supp. 2d 997 (S.D. Iowa
2008); *United States v. Rausch,* 570 F. Supp. 2d 1295 (D. Colo. 2008); *United States v. Doktor*,
slip op., 2008 W.L. 5334121 (M.D. Fla. Dec. 19, 2008); *United States v. Ontiveros,* 2008 wl
2937539 (E.D. Wis. July 24, 2008); *United States v. Hanson,* 561 F.Supp.2d 1004 (E.D. Wis.
June 20, 2008); *United States v. Shipley,* 560 F. Supp.2d 739 (S.D. Iowa June 19, 2008); *United
States v. Taylor*, 2008 WL 2332314 S.D.N.Y. June 2, 2008); *United States v. McClelland*, 2008
WL 1808364 (D.Kan April 21, 2008); *United States v. Baird,* Slip op., 2008 WL 151258
(D.Neb.Jan. 11, 2008);*United States v. Stabell,* 2009 WL 775100 (E.D. Wis. March 19, 2009);
*United States v. Gellatly,* 2009 WL 35166, *3-5 (D.Neb. Jan. 5, 2009); *United States v. Naxon,*
2008 WL 4277676. *4-7 (D.Neb. Sept. 12, 2008); *United States v. Grinbergs,* 2008WL 4191145,
*5-8 (D.Neb.Sept. 8, 2008); *United States v. Goldberg,* 2008 WL 4542957, *6 (N.D. Ill.April 30,
2008; *United States v. Sudyka, 2008 WL 1766765, *5-6, 8-9 (D.Neb. April 14, 2008).*

The rate of <u>non-government sponsored</u>, below-range sentences in child pornography cases was (22% in 2006), (27.2% in 2007), (35.7% in 2008), (43% in 2009), and (42.7% in 2010).[4]  In 2011, the non-government sponsored rate of below guideline sentences rose, to 43.7%, signaling that the trend toward a complete erosion of faith in the fairness of the child pornography guidelines continues.  Contrast that, in 2010, judges departed or varied downward in only 7.6% of murder cases, 4.7% of manslaughter cases, and 1.9% of drug possession cases. [5]

The rate of <u>government-sponsored,</u> below-range sentences in child pornography cases was (9.4% in 2006), (7% in 2007), (8.5% in 2008), (10.5% in 2009), and (13.4% in 2010).  These cases rarely present an opportunity for cooperation against others (and are never subject to "fast track" departures), so the vast majority of these government-sponsored reductions are for factors that are relevant under § 3553(a).[6]

The trend toward more government-sponsored departures in child pornography cases also continues.  During the first quarter of 2011, the government-sponsored below guideline rate increased to 17.3%, half of which were for reasons *other* than cooperation, that is, to reflect the circumstances of the offense and account for the history and characteristics of the defendant.

---

[4]U.S. Sent'g. Comm'n, 2010 Sourcebook of Federal Sentencing Statatistics, tbl, 27A; U.S. Sent'g. Comm'n, 2006-2009 Sourcebook of Federal Sentencing Statistcis, 2bl. 28.

[5]U.S. Sent'g Comm'n 2010 Sourcebook of Federal Sentencing Statistics, tbl.27A

[6]U.S. Sent'g. Comm'n, 2010 Sourcebook of Federal Sentencing Statistics, tbls. 27,27A; U.S. Sent'g Comm'n 2006-2009 Sourcebook of Federal Sentencing Statistics, tbl.28.

<u>Why a Variance is Warranted in Jennings' Case</u>

District Courts have been freed from strict adherence to the United States Sentencing Guidelines. *United States v. Booker,* 543 U.S. 220 (2005). Since the day that the Guidelines were first implemented, their mandatory nature was "constitutionally invalid, and [fell] outside of Congress' power to enact." *Booker*, at 250. Likely as a consequence of their constitutional infirmity since inception, "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Nelson v. United States,* 55 U.S. 350, 352 (2009)(emphasis in original).

So, therefore, "*Booker* was not an invitation to do business as usual." *United States v. Ranum,* 353 F.Supp.2d 984 (E.D. Wis 2005)(Adelman, J.). Instead, after "consult[ing] and correctly determin[ing] the sentencing range prescribed by the Sentencing Guidelines ... [t]he court must then impose a reasonable sentence in light of the factors enumerated in 18 U.S.C. § 3553(a)." *U.S. v. McBride*, 511 F. 3d 1293, 1297 (11th Cir. 2007), *See also Gall v. United States,* 552 U.S. 28 (2007). "Even where a district court has properly calculated the Guidelines, *it may not presume* that a Guidelines sentence is reasonable for any particular defendant, and accordingly, must conduct its own independent review of the § 3552(a) sentencing factors." *U.S. v. Dorvee,* 616 F.3d 174, 182 (2nd Cir. 2010)(emphasis added).

The Eleventh Circuit has affirmed substantial below-Guidelines sentences in cases involving serious offenses with substantial Guidelines exposure. *See e.g., United States v. Frey,* 563 F.3d 1223 (11th Cir. 2009)(affirming variance from level 43 (life) to 210

months in "utterly gruesome" case while recognizing that sentencing is the most difficult job a district judge performs); *United States v. Clay,* 483 F.3d 739 (11th Cir. 2007)(affirming 60 month sentence where Guidelines were 188 to 235 months based on post-offense rehabilitation); *United States v. Mathis,* 186 F.App'x 971 (11th Cir. 2006)(50% variance from top end of Guidelines affirmed in *Hobbs Act* extortion and obstruction of justice case); *United States v. Williams,* 435 F.3d 1350 (11th Cir. 2006) (90 months imprisonment was sufficient, but not greater than necessary to punish, deter and rehabilitate defendant even though low end of Guidelines was 188 months).

More importantly, there are two particular child pornography cases which are especially instructive, as each defendant faced a sentencing range identical to that which Jennings faces and the Eleventh Circuit affirmed below-Guidelines sentences of 72 months and 84 months. *See U.S. v. Gray,* 453 F.3d 1323 (11th Cir. 2006) and U.S. *v. McBride,* 511 F.3d 1293 (11th Cir. 2007), respectively.

In *McBride*, the defendant's Guidelines sentence was 151 to 188 months, which range was arrived at by application of the same Guidelines provisions which were applied in Jennings' case. *McBride,* at 1295. McBride had 981 images and 45 videos, *Id.,* which is less than the number that Jennings possessed. However, unlike Jennings, McBride had a long and disturbing history involving actual physical, sexual contact with minors. At age 16, he plead guilty to two counts of lewd acts on a child with a 4–year–old girl and a 3–year–old girl and also admitted to the following: performing oral sex on a 9–year–old boy at age fourteen and having the boy perform oral sex on him; molesting about 5 girls at his

church and his workplace at a fast-food restaurant; exposing himself to a 5–year–old boy at age eighteen; watching a 3–year–old girl play naked and later masturbating to the memory; watching a ten-year-old girl play naked and later masturbating to the memory; and placing himself in areas where young children congregated, in violation of a court order. Also, at age 20 he was arrested again when found to be taking pictures of 3 to 5–year–old girls. *Id.,* at 1295-96. In addition, McBride expressed his belief to a psychologist that some men sexually assaulted children because they thought the children would enjoy how it felt and that many men sexually assaulted children because their acts of molestation relieved the attackers' stress. *Id.*, at 1296.

The sentencing court in *McBride* adopted the computations in the PSI but, upon consideration of the § 3553(a) factors, determined that a below-Guidelines sentence of 84 months was appropriate. What seemed to weigh most heavily in the court's determination was that the defendant had, himself, been abandoned by his family and abused as a child. *Id.* The Eleventh Circuit Court of Appeals deferred to the district court's exercise of its discretion by affirming the sentence. It opined that the sentence was substantively reasonable, after finding that the district court followed proper procedure by first computing the proper Guidelines range and then weighing the sentencing factors in 18 U.S.C. § 3553(a). *Id.*, at 1298.

> Whatever sentence we might have imposed, we do not believe
> an 84-month sentence lies outside the range of reasonable in
> this case. The sentence exceeds the statutory minimum by

12

some years. The district court explicitly discussed a number of the § 3553(a) factors, including the goal of protecting the public. In announcing Defendant's sentence, the court stated that the sentence provides for "a significant term of incarceration to account for his misconduct and the seriousness of the offense and, frankly, to keep him off the streets for that period of time so that he will not be in a position to repeat this conduct in society." About Defendant's own history, the district court also said that the Defendant "has perhaps one of the worst histories that I have seen since being on the bench, being essentially abandoned by his family and then consistently abused." We cannot conclude that the district court committed clear error in judgment in determining that a sentence considerably less than the Sentencing Guidelines' recommended range was appropriate.

*McBride*, at 1298. Though Jennings possessed significantly more images and videos than McBride did, the latter's history is clearly more troubling, resulting in much greater cause for concern for protecting the public from the prospect of future crimes by that defendant. If 84 months of incarceration followed by 10 years of supervised release was within the range of reasonable sentences in McBride's case, it goes without saying that a similar sentence would suffice for Jennings.

In *Gray* the defendant received a sentence of 72 months of imprisonment followed

by 3 years of supervised release. *Gray*, 453 F.3d, at 1324. Gray possessed approximately 300 child pornography images, *id.,* which, again, is significantly fewer than the number Jennings possessed. But like Jennings, he was convicted of the same two crimes, he too was 64 years old, he too had been engaging in the offense conduct for approximately 5 years, he too had never molested a child, and he too cooperated with the investigating agents, accepted responsibility for his conduct and was contrite. *Id.,* at 1324.

On the other hand, unlike Jennings, Gray specifically sent child pornography images to someone over the internet, whereas the distribution of which Jennings is guilty involved the more passive act of allowing access by others of the contents of his computer *via* peer-to-peer software. *See* PSI, at pars. 9 - 19. Also unlike Jennings, Gray failed to appear for his change of plea hearing and was arrested on a bench warrant after an armed standoff of sorts with the police.[7] *Gray*, at 1324. Like Gray, Jennings also suffered from depression, though Gray's condition seems to have been more acute as it reportedly resulted in four alleged suicide attempts. *Id.,* and PSI, at par. 69.

"In determining Gray's sentence, the district court considered that Gray had set up a screen name to carry out his offense, possessed as many as 300 child pornography images, distributed some images, and failed to attend his plea hearing. The court also explained that it would 'take into consideration [Gray's] age, [his] prior minimal record, [his] medical condition, and ... [would] form a sentence which it [felt was] reasonable under the

_____

[7]Gray's armed standoff did not involve him pointing a gun at the police, but rather aiming it at his own head. The incident occurred while he was a fugitive in the child pornography case and resulted in his being charged with disorderly conduct and resisting law enforcement. *Gray*, at 1234.

circumstances.'" *Gray*, at 1324. The Eleventh Circuit found that

> the district court gave specific, valid reasons for imposing a
> sentence that was lower than the guidelines range, ... [taking]
> into account Gray's age, his prior minimal criminal record, and
> his medical condition ... [and held that] [t]hese are all valid
> considerations because they relate to the 'history and
> characteristics of the defendant.' The court weighed these
> factors against "the nature and circumstances of the offense"
> and decided to impose a non-guidelines sentence ... the court's
> statements show that it believed the 72–month sentence to be
> reasonable. Although Gray's sentence is less than half the 151
> months that defines the bottom of the guidelines range, under
> the circumstances and given the district court's explanation we
> cannot say that is unreasonable in light of the § 3553(a) factors.

*Gray*, at 1325. (Citations omitted).

The facts in *Gray* are strikingly similar to those in Jennings' case. As with *McBride,* if not similar, the facts in *Gray* are more egregious than those involved in Jennings' case, not less. Though there were substantially more images involved in Jennings' case, chances are that the disparity is attributable to the advances is computer technology between 2009 to 2013, versus 2001 to 2006, and the relative speeds with which such items could be downloaded, as opposed to being an indication that Gray exercised greater restraint that Jennings could muster. But even if not so, Jennings respectfully submits that the difference

in the number of images is offset by the more aggravating facts involved in Gray's case and ought not account for a measurable disparity in the defendants' sentences.

The § 3553(a) sentencing factor which the similarity in these three cases brings most poignantly to mind is the "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct". *See* 18 U.S.C. § 3553(a)(6). Where as here in this very circuit, three defendants' cases are so similar, § 3553(a)(6) all but mandates that their sentences be similar.

Accordingly, Jennings respectfully moves the Court for a downward variance from his prescribed Guidelines range on the ground that: the Sentencing Commission has repeatedly declared that the child pornography Guidelines provisions produce excessive sentences; multiple district and circuit courts concur; and the Eleventh Circuit itself has all but signaled the range of imprisonment it deems appropriate by affirming cases which are materially similar to Jennings' case.

<u>A Variance is also Warranted to Offset the Substantial</u>
<u>Monetary Penalty to be Exacted from Jennings</u>

Jennings' case also warrants a downward variance because the monetary punishment to be exacted from him will literally leave him with nothing and is far greater in amount than that exacted from similarly situated defendants.

By most standards, Jennings was once a wealthy man, having owned and operated a firearms business that netted him substantial profits. PSI, at par. 77. However, in 2003, he was virtually wiped out as a result of a multi-million dollar judgment against him and his company. *Id.* The plaintiff in that case took, and continues to stand alert and ready to take, everything he owns that is subject to the judgment. His house is the only asset of value with

which Jennings was left because it was homestead protected. For several years, Jennings'
only income has been a monthly Social Security stipend in the amount of $1,700.00. As
indicated in his PSI, the probation officer located no worthwhile assets, so much so that she
opined that Jennings did not have the ability to pay a fine. PSI, at par. 80.

To be sure, Jennings' mother is still well to do and Jennings has benefitted from her
largesse over the years. Most significantly, Jennings is a pilot and his mother owns
expensive toys which she allowed Jennings to use, including a few small aircraft. His mother
also hired undersigned counsel to represent her son in this matter – but whether or not that
turns out to be a benefit is yet to be revealed. In any event, Jennings' house is the only asset
of value that he owns and he owns it together with his wife as tenant's in the entirety.[8]

As for the house, the Government has sought to forfeit it on the rather tenuous, but
established, ground that he was in his house at the time he committed the offenses of
conviction. *See* Forfeiture Count of Indictment and Docket Entry No. 54. The Court has
already entered a Preliminary Order of Forfeiture and the parties have all but finalized a
settlement. The settlement will involve the sale of the house so that the Government can
forfeit $500,000.00 of the proceeds derived therefrom, which amount represents Jennings'
interest in the property. Jennings' wife will get what funds remain after costs and fees – an
amount anticipated to be less than the $500,000.00 being forfeited. It is expected, but not
guaranteed, that Jennings' wife will use the proceeds she receives to buy a less expensive
house as she will no longer have a place to live.

---

[8]Note that, after due consideration, Jennings was appointed an Assistant Federal
Public Defender. *See* Docket Entry No. 11.

So, as a legal matter, Jennings will be left with zero. His wife may have a house in which he may live once released, but she may not. She may not buy a house as expected and, instead, may rent and deplete all of the resources. Moreover, she may divorce him while he is incarcerated. Such would not be an unusual for a defendant who is serving a lengthy period of incarceration. If she does divorce him, Jennings will not be entitled to any of the proceeds his wife received from the settlement as his interest in the property is what is being forfeited. Also, Jennings' mother is 83 years old and pursuant to provisions in place which are not likely to change, Jennings will get nothing by way of inheritance if she passes before he does. So when the forfeiture is complete, Jennings will be totally broke. And the substantial sum of money on the verge of being forfeited amounts to EVERYTHING Jennings has.

Notably, the asset/money of which Jennings is being divested was hard-earned over the course of a lifetime of hard work. It was not stolen. Criminal defendants who have not lived off of ill-gotten gains derived from drug dealing, fraud or theft of some kind, are not typically wiped out financially as part of their punishment. If a member of his family does not elect to take on the burden of supporting him, there is a real possibility that Jennings may be condemned to life on the streets once released.

People make mistakes and Jennings' mistake was reprehensible and unforgivable. But the fact that he will be left financially destitute in a case where the assets being taken were not derived from the crimes he committed, is no trivial matter. The Supreme Court has made clear that even where predicated on the fact that an asset was an instrumentality of the offense of conviction, it's forfeiture amounts to punishment for the crime. *See Alexander*

*v. U.S,* 509 U.S. 544, 558 (1993) and *U.S. v. Bajakajian*, 524 U.S. 321, 333-34 (1998).

Jennings therefore respectfully requests that the Court take this fact into account and mitigate his sentence so as to ensure proper balance to the entirety of his punishment.

<u>The § 3553(a) Factors as they Apply to Jennings' Case</u>

The manner in which the 3553(a) factors apply to Jennings case are addressed below and they establish why a downward variance is appropriate in his case.

3553(a)(1) - <u>The Nature and Circumstances of the Offense and</u>
<u>the History and Characteristics of the Defendant</u>

Discussing the mitigating circumstances of a crime of this nature is a precarious exercise because it risks the perception that the offense is being trivialized. However, for sentencing purposes, the nature and circumstances surrounding the offense conduct need to be parsed and weighed. Agreeing that a single act involving child pornography is one too many, is not inconsistent with advancing the argument that the sentence Jennings faces is way too excessive.

As discussed above, the nature of Jennings' offenses makes him particularly susceptible to abuse in prison and, though for his own protection, will result in the conditions of his incarceration being more onerous than that of most other inmates. There are also other circumstances of the offense and characteristics of this defendant which warrant consideration under section 3553(a)(1).

a. *Nature and Circumstances of the Offense*

The nature of Jennings' crime is reprehensible by all accounts and he needs to be punished. But when taking "the kinds of sentences available" into account, *see § 3553(a)(3),* it cannot go unnoticed that, in addition to incarceration, supervised release and

19

forfeiture of everything he owns, Jennings will: (1) have to register as a sex offender as a condition of supervised release; (2) have to register pursuant to independent federal and state sex offender registration requirements for the rest of his life; (3) have to apprise the sex offender registration agency in the state where he resides of changes to his name, residence, employment, etc.; (4) be assigned the responsibility of ensuring that his registration with all of the various agencies is in compliance; and (5) be subject to federal and state prosecution and penalties for failing to do so. He will also be subject to restrictions concerning where he may reside.

So incarceration is but one of many facets of Jennings' sentence. He will be broke, and be yoked with restrictions and requirements for the rest of his life. And while these harnesses may be necessary, or at least prudent, to ensure public safety, they nevertheless compound the punitive torridity of Jennings' punishment.

b.     _History and Characteristics of the Defendant_

Jennings is a 64-year-old man who does not have an extensive history which speaks poorly of him in any significant way. Moreover, undersigned respectfully submits that it is universally accepted that being sexually attracted to children is an affliction – a perverse predisposition and developmental disorder which typically develops out of psychological scarring in one's own life. In other words, one does not wake up one day and consciously decide to be aroused by prepubescent children. Jennings rejects the notion that one can just decide to direct one's sexual attraction toward toddlers any more than one can decide to be sexually aroused by an inanimate object.

But even though development of such a perversion may be, at least in part, outside of

a person's control, it is still incumbent upon anyone so afflicted to subdue the urge completely, because acting on the proclivity is inherently repugnant and victimizes children, their families and society at large. Child pornography is universally considered to be loathsome and there can be zero tolerance for any conduct in which it may be implicated.

That said, while punishment is necessary, treatment ought to be prioritized because the defendant's crimes are the symptoms of an underlying malady which it behooves us all to have addressed.

3553(a)(2)(A) - (D)  <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner</u>

Similar factors within this grouping will be treated together to avoid further redundancy.

c.    *Reflecting the Seriousness of the Offense and Providing Just Punishment*

A sentence of 72 to 84 months, the below-Guidelines sentences in the range of what McBride and Gray received, would be adequate to address the considerations enumerated in § 3553(a)(2)(A). Jennings' offenses were serious to be sure, but a sentence of 151 to 188 months would be excessive for a 64-year-old man who's every asset has also been taken. Add the onerous conditions of supervised release and the life-long requirements and restrictions to which he will be subjected, and it is clear that Jennings will be paying a really heavy price for his transgressions. He need not be incarcerated for almost the rest of his life for his debt to society to be paid.

d.    *Promoting Respect for the Law, Affording Adequate Deterrence and Protecting the Public from Further Crimes of the Defendant*

As far as promoting respect for the law is concerned, Jennings has been scared straight

and the supervision to which he will be subjected upon his release will ensure no recidivism. Sentencing Jennings in the neighborhood of 72 to 84 months is so substantial that it is difficult to see how such a sentence will do any less to promote respect for the law than would a sentence of 151 to 188 months. Excessive punishment tends to cause one to perceive one's self as being treated unfairly and, thus, it doesn't promote respect for the law, but instead, spawns resentment and disdain.

For most of his sixty plus years, Jennings was a law-abiding and productive member of society and therefore there is no reason to believe that he needs a sentence of 121/2 to 15 years in order to get the message that what he did cannot be repeated and will not be tolerated. From a character perspective, there is no reason to believe that he is predisposed to living his life in dereliction of the law. The goal of promoting respect for the law is an interest which would be adequately served by a sentence in the range that Jennings seeks. Moreover, given the lifetime supervision that Jennings will be under, there is virtually no chance for recidivism and so the public will be protected.

Further to the point of protecting the public from future crimes of the defendant, there have been studies that offer useful insight. For example, a 4-year study that tracked the lives of 72 people who were referred to outpatient treatment programs after being charged with or convicted of child pornography found <u>zero</u> instances of re-arrests for any contact offenses.[9]

Another 6-year study tracked 231 child pornography offenders without prior contact

---

[9] *See* Wollert, R., W. Waggoner, J. & Smith, J. Federal Child Pornography Offenders (CPOs) Do Not Have Florid Offense Histories and Are Unlikely to Recidivate, The Sex Offender: Volume 7.

offenses. It found that 9 of them, (or 3.9%), of the sample, committed a non-contact sexual offense; and 2 people, (or 0.8%) committed a contact offense.[10] Similar findings have resulted from other reliable studies.[11]

The court has the authority to impose supervised release in this case from a minimum of 5 years up to life. 18 U.S.C. § 3583(k). The Court can exercise it's discretion to impose whatever additional conditions and restrictions it deems appropriate and extend the term of supervised release for as long as it deems necessary to ensure that the public is protected and Jennings receives adequate monitoring and treatment.

Finally, regarding the § 3553 consideration of providing the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most

---

[10] *See* Jerome Endrass et al., *The Consumption of Internet Child Pornography and Violent Sex Offending,* 9BMC Psychiatry 43 (2009), http:/www.ncbi.nlm.nih.gov/pmc/articles/PMC2716325/pdf/1471-244X-9-43.pdf..

[11]*See* Michael C. Seto & Angela W. Eke, *The Criminal Histories and Later Offending of Child Pornography Offenders,* 17 Sexual Abuse 201, 208 (2005) (finding that 1.3 percent of Internet-only offenders recidivated with contact sex offenses, and stating that "our finding does contradict the assumption that all child pornography offenders are at very high risk to commit contact sexual offenses involving children."); L. Webb, J. Craissati & S. Kean, *Characteristics of Internet Child Pornography Offenders: A Comparison with Child Molesters,* 19 Sexual Abuse 449, 463 (2007) (finding Internet-only offenders 'significantly less likely to fail in the community than child molesters," and concluding that "by far the largest subgroup fop internet offenders would appear to pose a very low risk of sexual recidivism"), http://sax.sagepub.com/content/19/4/449.full.pdf+html; Michael C. Seto, *Assessing the Risk Posed by Child Pornography Offenders, presented for the G8 Global Symposium* (Mar. 9, 2009), http://www.iprc.unc.edu/G8/Seto_Position_Paper.pdf; Andres E. Hernandez, *Psychological and Behavioral Characteristics of Child Pornography Offenders in Treatment*, at 4 (Apr. 2009) ("the argument that the majority of [child pornography] offenders are indeed contact sexual offenders and, therefore, dangerous predators...simply is not supported by the scientific evidence")(unpublished manuscript) emphasis deleted), http://www.iprc.unc.edu/G8/Hernandez-position–paper–Global-Symposium.pdf.

effective manner.  On information and belief, the Sex Offender Treatment Program offered in prison lasts anywhere from 18 to 36 months.  Therefore, a 72 to 84-month sentence would allow him ample time to complete the program.  Moreover, Jennings respectfully submits that the goal of effective counseling will be better served while Jennings is on supervised release than it would be while he is in prison.  Being at liberty provides a far more conducive environment for rehabilitation and progress where: (1) he is emancipated from the debilitating stress of a persistent threat of physical abuse in prison; (2) there are more options for treatment outside of prison than inside; and (3) he has the benefit of the moral support of his family.

CONCLUSION

Jennings committed a serious offense and must be punished.  However, anything greater than a 72 to 84 month sentence would be excessive and substantively unreasonable in light of the fact that: others in this jurisdiction with more troubling backgrounds have received substantial departures for similar crimes; Jennings is being left financially destitute as part of the punishment for his crimes; he will be particularly susceptible to abuse in prison and vulnerable to such abuse because of his age; he will likely serve substantial periods of his sentence in some form of isolation; and because there are means other than incarceration which will ensure the safety of the public and that Jennings receives adequate and effective treatment for his condition.

Accordingly, Jennings respectfully moves the Court for a downward departure and downward variance from his prescribed Guideline range to a sentence of incarceration of between 72 and 84 months.

Respectfully submitted,

*David A. Howard*
David A. Howard, Esq.
25 SE 2nd Avenue, Ste. 1100
Miami, FL 33131

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served upon all parties of record *via* the Court's CM/ECF electronic filing system this 24th day of May, 2013.

By: *David A. Howard*
David A. Howard