IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case no.:  6:12-cr-261-Orl-28KRS

UNITED STATES OF AMERICA,          )     Orlando, Florida
                                   )     January 28, 2013
            Plaintiff,             )     10:08 a.m.
                                   )
            v.                     )
                                   )
BRUCE LEE JENNINGS,                )
                                   )
            Defendant.             )
_____)

Transcript of the change of plea hearing

before the Honorable Karla R. Spaulding

United States District Court Magistrate Judge

Appearances:

Counsel for Plaintiff:  Myrna Mesa
                        Nicole Andrejko

Counsel for Defendant:  David Howard

Digital transcriber:    Diane C. Peede, RMR, CRR
                        United States Courthouse
                        401 West Central Blvd., #4600
                        Orlando, Florida  32801
                        (407) 615-0305

Proceedings recorded by FTR Gold digital recording,
transcript produced by computer.

PROCEEDINGS

1

2    THE COURTROOM DEPUTY:  The case number is 6:12-cr-

3  261-Orl28KRS, United States of America versus Bruce Lee

4  Jennings.

5    Counsel, please state your appearances for the

6  record.

7    MS. MESA:  Good morning, Your Honor.  Myrna Mesa

8  and Nicole Andrejko for the United States.  Along next to us

9  is Joe Gray from Homeland Security Investigations.

10    THE COURT:  Good morning.

11    MR. HOWARD:  Good morning, Your Honor.  David

12  Howard on behalf of Mr. Jennings.

13    THE COURT:  Good morning.  I understand that Mr.

14  Jennings wishes to plead guilty to both counts of the

15  Indictment without a plea agreement.

16    MR. HOWARD:  That's correct, Your Honor.

17    THE COURT:  All right.

18    Excuse me.  The trees are dropping their pollen.

19    Mr. Jennings, I'm not the Judge who will sentence

20  you if you plead guilty.  I'm a magistrate judge.  I can

21  conduct a guilty plea proceeding with your permission.  I

22  have a document signed by you indicating you agree to let me

23  do that.  Is that correct?

24    THE DEFENDANT:  That's correct.

25    THE COURT:  All right.  What I'm going to do is

1    have you placed under oath and ask you some questions.  The

2    first group of questions will be designed to make sure you

3    understand what the proceeding is about.  Then I'll talk to

4    you about the charges in the Indictment.  We'll go over what

5    the government would have to prove before you could be found

6    guilty.  We'll review the penalties you face and the rights

7    you lose if you plead guilty.  At the end I'm going to ask

8    you about what you did to make sure your conduct violates the

9    crimes to which you wish to plead guilty.

10            Because you will be under oath, if anything you

11   tell me that is not completely truthful, you could be

12   separately prosecuted for perjury or making a false

13   statement.  So if you don't understand something I ask,

14   please let me know.  I'll try to ask it more clearly.

15            Your attorney will be here throughout the

16   proceeding.  You can speak to him privately at any time.

17            And we make a record of what occurs through a

18   digital recording, which is the reason for the microphones.

19   So if you would continue to answer my questions out loud,

20   please, that way we'll be able to capture your answers.

21            Do you have any questions before we go further?

22            THE DEFENDANT:  No, ma'am.

23            THE COURT:  All right.  You do not need to stand or

24   raise your hand, but Mr. Jackson is going to place you under

25   oath.

1

2                     BRUCE LEE JENNINGS,

3    having been first duly sworn, was examined and testified as

4    follows:

5            THE COURTROOM DEPUTY:  Please state your name for

6    the record.

7            THE DEFENDANT:  Bruce Lee Jennings.

8            THE COURT:  Mr. Jennings, have you ever been known

9    by any other name?

10           THE DEFENDANT:  No.

11           THE COURT:  How old are you?

12           THE DEFENDANT:  Sixty-four.

13           THE COURT:  How far did you go in school?

14           THE DEFENDANT:  I was in the eleventh grade.

15           THE COURT:  All right.  Do you read, speak and

16   understand English?

17           THE DEFENDANT:  I do.

18           THE COURT:  Are you a citizen of the United States?

19           THE DEFENDANT:  I am.

20           THE COURT:  The next questions are the ones to make

21   sure you're thinking clearly today.  First, have you ever

22   been under the care of a psychologist or a psychiatrist?

23           THE DEFENDANT:  I have been reviewed but not under

24   their care.

25           THE COURT:  All right.  No diagnosis of a mental

1   disorder?

2           THE DEFENDANT:  No.

3           THE COURT:  All right.  Are you currently taking

4   medicine of any kind?

5           THE DEFENDANT:  No, ma'am.

6           THE COURT:  In the last two days have you had any

7   drugs, alcohol or medicine, including anything over the

8   counter like aspirin?

9           THE DEFENDANT:  I have a baby aspirin in the

10  morning.

11          THE COURT:  All right.  Is anything interfering

12  with your ability to be able to think clearly today and

13  understand what's going on?

14          THE DEFENDANT:  No.  I'm good.

15          THE COURT:  All right.  Next, I want to talk about

16  the charges in the Indictment.  Have you had a chance to

17  review the Indictment?

18          THE DEFENDANT:  Yes.

19          THE COURT:  All right.  I'll go through them count

20  by count.  In Count One, the grand jury charges that on or

21  about August 22 of 2012, in Volusia County, in the Middle

22  District of Florida, that you knowingly distributed material

23  containing images of child pornography, that is, visual

24  depictions of a minor engaging in sexually explicit conduct,

25  which had been shipped and transported in and affecting

interstate and foreign commerce by any means, including by computer, and using any means and facility of interstate and foreign commerce, that is, the Internet, including two computer files listed by name.  That charge is a violation of Title 18, United States Code, Section 2252 A(a)(2)(B) and (b)(1).

Before you could be found guilty of that offense, the United States would have to prove beyond a reasonable doubt that you knowingly distributed an item or items of child pornography.  "Knowingly" means you did it voluntarily.  No one forced you to do it.

They would have to show that the items of child pornography had been transported in interstate commerce, including by computer, over the Internet, and that when you distributed the items, you believed that the items were child pornography.

Do you understand what would have to be proved before you could be found guilty of that charge?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Count Two alleges that on or about September 14, 2012, in Volusia County, in the Middle District of Florida and elsewhere, that you knowingly possessed material containing images of child pornography, that is, visual depictions of a minor engaging in sexually explicit conduct, which had been shipped and transported in

and affecting interstate and foreign commerce by any means,
including by computer, and using any means and facility of
interstate and foreign commerce, that is, the Internet.
That's a violation of Title 18, United States Code, Section
2252A(a)(5)(B) and (b)(2).

Before you could be found guilty of the charge in
Count Two, the United States would have to prove beyond a
reasonable doubt that you knowingly possessed an item of
child pornography; that the item of child pornography had
been transported in interstate commerce, including by
computer, over the Internet; and that when you possessed the
items, you believe believed the items were child pornography.

Do you understand what would have to be proved
before you could be found guilty of the offense in Count Two?

THE DEFENDANT:  Yes.

THE COURT:  All right.  There's also a forfeiture
allegation in the Indictment.  It alleges generally that if
you are convicted of either of the violations in Count One or
Count Two, you'll be required to forfeit to the United States
money or property gained during the commission of the offense
or used during the commission of the offense; and we'll talk
about that a little bit more in a few minutes.

I've only summarized the forfeiture part and I
haven't read the file names into the record.  You have the
right to have the full Indictment read.  Would you like me to

read it verbatim or you can waive the reading if you've been
through it?

    THE DEFENDANT:  I think we should waive that,
ma'am.

    THE COURT:  All right.  Thank you very much.

    MR. HOWARD:  Your Honor, I would like to say this.

    THE COURT:  Sure.

    MR. HOWARD:  Pardon the interruption.

    THE COURT:  That's all right.

    MR. HOWARD:  With regard to the forfeiture count,
as to the specific items that are -- that the government
seeks forfeiture of, including real property, we are not of
the understanding that by pleading openly to the Indictment,
that we are conceding that everything they seek to forfeit is
forfeitable.  We're pleading to the criminal conduct, but
we're not acceding to forfeiture of everything that's
included.  So we're reserving our right to challenge that, to
the extent that there's legal grounds for doing it.

    THE COURT:  We're fortunate to have our asset
forfeiture attorney here with us.

    Do you two need to speak about that?  There is no
plea agreement.

    MS. ANDREJKO:  We can speak after the hearing, Your
Honor.  I think the proper procedure would be that the
government would move forward with filing the motion for

1  preliminary order of forfeiture.  Then defense counsel can

2  file any objection, and then it can be determined that way.

3              THE COURT:  All right.

4              Does that comport with the way you wanted it

5  handled, Mr. Howard?

6              MR. HOWARD:  That is correct, Your Honor.

7              THE COURT:  All right.  Thank you very much.

8              Have you had enough time to talk about the

9  Indictment and the forfeiture issue with your attorney?

10             THE DEFENDANT: Yes, I have.

11             THE COURT: All right.  Are you satisfied with his

12  services representing you in this case?

13             THE DEFENDANT:  Yes.

14             THE COURT: Mr. Howard, is there any question as to

15  your client's competency?

16             MR. HOWARD:  I have none.

17             THE COURT:  Any from the United States?

18             MS. MESA:  No, Your Honor.

19             THE COURT:  Mr. Jennings, I find you are competent,

20  which simply means able under the law to plead guilty if you

21  want to plead guilty, but you don't have to plead guilty.

22             I have a number of things I need to talk with you

23  about yet.  So if at any point you decide you do not want to

24  plead guilty to either/or both counts, just let me know.

25  We'll stop this proceeding and the case will go on as

1  previously scheduled.

2        The next thing I need to talk to you about is the

3  reason you're proposing to plead guilty.  First, has anyone

4  done anything you think is wrong or unfair, threatened you in

5  any way to get you to plead guilty to these charges?

6        THE DEFENDANT:  No, they haven't.

7        THE COURT:  Has anyone made you any promises about

8  what sentence you will receive or anything else that will

9  occur in exchange for your plea of guilty?

10        THE DEFENDANT:  No.

11        THE COURT:  Do you want to plead guilty because you

12  committed these offenses or for some other reason?

13        THE DEFENDANT:  Because I've committed these

14  offenses.

15        THE COURT:  All right.

16        Is there anything, counsel, that you need to put on

17  the record regarding plea negotiations, if any?  There's a

18  relatively new Supreme Court case that suggests that we ought

19  to make a record if there were plea offers made but not

20  accepted, should there become an issue later on.

21        MS. MESA:  Yes, Your Honor, there were plea

22  negotiations between both Mr. Jennings' former attorney and

23  Mr. Jennings' current attorney, and they were never accepted.

24        THE COURT:  All right.

25        Mr. Jennings, were you aware that plea offers had

1    been made?  We don't need to talk about why you accepted them

2    or didn't accept them.  I just want to make sure that your

3    attorneys talked to you about them.

4              THE DEFENDANT:  Yes, I'm aware of one plea

5    agreement.

6              THE COURT:  All right.

7              Was there only one, Ms. Mesa?

8              MS. MESA:  There was one plea agreement that was

9    initiated with his first attorney, Mr. Langs, and then there

10   were just discussions of a plea agreement with his current

11   attorney.

12             THE COURT:  All right.

13             Mr. Howard, without waiving the privilege, did you

14   speak to your client about subsequent plea discussions?

15             MR. HOWARD:  I did.

16             THE COURT:  All right.

17             Mr. Jennings, you've had an adequate time to talk

18   with your attorney about both the original plea agreement and

19   the subsequent plea discussions?

20             THE DEFENDANT:  I'm only familiar with the content

21   of the first plea agreement, and if we're discussing that

22   content with my current counsel, then that would be correct.

23             THE COURT: All right.

24             MR. HOWARD:  Nothing changed.

25             THE COURT:  Okay.  Very good.

1        And after having those discussions, you have

2   decided to proceed without a plea agreement?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Okay.  Let me tell you what the

5   penalties are that you face if you plead guilty to these

6   offenses.  Count One, which we generally refer to as a charge

7   of distribution of child pornography, carries a minimum

8   mandatory term of five years in jail, up to 20 years in jail,

9   a term of not less than five years and not more than life of

10  supervised release after getting out of jail, a fine of up to

11  $250,000, and you would be required to pay a $100 special

12  assessment at the time of sentencing.

13           Count Two, which we refer to generally as a

14  possession of child pornography count, carries the

15  possibility of up to ten years in jail, a term of not less

16  than five years and up to life and supervised release after

17  getting out of jail, a fine of not more than $250,000, and

18  another $100 special assessment.

19           In addition, if anyone was injured, any property

20  was damaged or anybody lost money as a result of the

21  commission of either offense, you could be required to pay

22  restitution to the victim of the offense; and we've also

23  talked about the possibility that you would be required to

24  forfeit money or property gained or used during the offense.

25  That generally includes the computers and computer devices

that contained child pornography.  It also generally includes

any visual depictions, anything that had been printed out,

magazines, that kind of thing.

Based on what Mr. Howard said, it could also

include real property where the crimes occurred; but by

pleading guilty, you are admitting to the facts that support

the elements of the crime, but not being required to admit

that anything specifically is forfeitable.  That's a decision

that will be made by the district judge in response to a

motion filed by the United States.  Does that make sense?

THE DEFENDANT:  Yes, it does.

THE COURT:  All right.  Now, Judge Antoon is the

Judge who will sentence you if you plead guilty.  He's going

to look at something we call the sentencing guidelines to

help to decide what sentence you should receive, up to but

not more than the maximums I just talked about.

Have you and your attorney talked about how the

sentencing guidelines might apply in this case?

THE DEFENDANT:  Yes, we did.

THE COURT:  I cannot tell you today what the

sentencing guideline range will be for you because I do not

have all the information I need to do that.  If you plead

guilty, the Court's Probation Office will conduct an

investigation.  They'll look at what happened here.  They'll

look at whether you have any prior criminal history.  They'll

1    determine whether you accepted responsibility, things of that

2    nature, and they'll prepare a written report.

3           You and your attorney will receive a copy of the

4    report before the sentencing.  So will the attorney for the

5    United States.  If there's anything in the report you think

6    is not correct, your lawyer can make an objection.  If the

7    objection isn't worked out before sentencing, Judge Antoon

8    will hold a hearing and he'll rule on the objection.

9           Only at the point the report is done and the

10   objections are ruled on will there be enough information to

11   know for sure what your sentencing guideline range is.

12          I'm confident your attorney has given you his best

13   estimate of the sentencing guideline range, but he can't know

14   for sure until the report is done and the objections are

15   ruled on.  So it's important for you to understand that if

16   the sentencing guideline range or the sentence is something

17   different than you expect it to be, you would not be allowed

18   to withdraw your guilty plea for that reason.  Is that clear?

19          THE DEFENDANT:  That's clear.

20          THE COURT:  All right.  We don't have parole in the

21   federal prison system anymore.  That used to be a kind of

22   early release program.  Now, if you're sentenced to a time in

23   jail, you'll serve almost all, if not all, of any term of

24   imprisonment imposed.

25          I mentioned supervised release as part of a

possible sentence.  That's a time a person serves under the

supervision of the Probation Office after getting out of

jail.  There would be things you had to do and things you

could not do as conditions of supervision.

If you violated a condition of your supervised

release, your supervised release could be taken away.  You

could be sent back to jail to serve the term of supervised

release in addition to the time you had served on the

original sentence.

The Court could require that you contribute

financially to the cost of your supervision if you had the

money to do that.

And I assume, Ms. Mesa, that, if convicted, Mr.

Jennings will have to comply with the requirements of SORNA.

MS. MESA:  That's correct, Your Honor.

THE COURT:  All right.

Sir, if you are convicted of these offenses, you

will have to comply with the requirements of the Sexual

Offender Registration and Notification Act.  That's a federal

statute that requires an individual convicted of certain

crimes to keep the appropriate authorities advised of his

place of residence, his place of school, and if he changes

those locations.

Failure to comply with SORNA would be an additional

felony offense, separate and apart from the ones that you

1   currently face; and you'll be given more information about

2   the requirements of SORNA if you are found guilty of these

3   offenses.

4           Finally, you will be required to cooperate in the

5   collection of a D.N.A. sample if that becomes required under

6   the law.

7           In cases of this type, at the end of a term of

8   criminal imprisonment, there is an evaluation of whether an

9   individual is safe to be released back to the community.  If

10  it were to be determined that you were a sexual offender that

11  would cause substantial risk of harm if released into the

12  community, there could be a subsequent term of civil

13  commitment.

14          I haven't seen it happen much in these cases, but I

15  have to tell you the worst case basis; but that's something

16  that will be looked at at the end of any term of

17  imprisonment.

18          Do you have any questions about those possible

19  penalties that you face?

20          THE DEFENDANT:  I do not.

21          THE COURT:  All right.  Let me tell you next about

22  the rights you give up by pleading guilty.  You do have the

23  right to have a trial before a jury composed of twelve

24  people.  During the trial you would be presumed to be

25  innocent.  The United States would have to prove that you

1   were guilty beyond a reasonable doubt.  You wouldn't have to

2   prove anything.

3          During the trial the witnesses would have to come

4   into court and testify in front of you.  Your lawyer could

5   ask them questions and he could ask the judge to keep out all

6   or parts of anything the witnesses said and all or parts of

7   any other evidence offered against you.

8          You would also have the right to require witnesses

9   and evidence to be brought into court and presented to the

10  jury on your behalf.

11         During the trial you could testify, talk to the

12  jury under oath if you wanted to, but you'd have the right

13  not to testify and neither the judge nor the jury could

14  decide you did anything wrong based on your decision not to

15  testify.  That's your right against self-incrimination.  It

16  gives you the absolute right to remain silent.

17         If you plead guilty and the district judge accepts

18  your plea, do you understand there will be no trial, you'll

19  give up all these rights I've talked about, including the

20  right to remain silent, you'll give up any motions that your

21  lawyers filed or that you asked them to file on your behalf,

22  and the judge will find you guilty based on upon your guilty

23  plea?

24         THE DEFENDANT:  I do.

25         THE COURT:  All right.  If you plead guilty, you

1　are admitting for all time that you committed the crime.  As

2　I mentioned a minute ago, you give up any defenses or excuses

3　you may have.  You also give up the right to come back to

4　this court or to go to another court later on and ask that

5　the finding that you are guilty be overturned.

6　　　　The right to come back to this court or to go to

7　another court is called the right to appeal.  So if you plead

8　guilty, you have no right to appeal from the finding that you

9　are guilty.  If you think the judge makes a mistake in the

10　sentence you receive, you do have the right to appeal from

11　that, but not from the finding that you committed the crimes.

12　Do you understand that difference?

13　　　　THE DEFENDANT: Yes, I do.

14　　　　THE COURT:  These are felony offenses.  So if you

15　are convicted, you will lose your civil rights.  Those

16　include, but are not limited to, the right to serve on a

17　jury, to vote, to keep and bear firearms and to hold public

18　office.

19　　　　There is a right you do not give up by pleading

20　guilty and that's the right to have a lawyer represent you in

21　this case.  If you decide to go to trial, your lawyer is

22　going to represent you all the way through the trial and at

23　every other part of the case.  If you decide to plead guilty,

24　he's going to represent you all the way through the

25　sentencing.

1    If you think the Judge makes a mistake in the

2 sentence you receive and you want to appeal from that, the

3 Court would appoint an attorney to represent you for the

4 direct appeal if you could not afford to hire one.

5    I've talked about many things.  Do you have any

6 questions about anything I've gone over?

7    THE DEFENDANT:  No, no questions.

8    THE COURT:  All right.  Tell me then what it is you

9 did that makes you guilty of the charges in Counts One and

10 Two of the Indictment.

11    THE DEFENDANT:  I used the computer to download

12 child pornography and I also allowed the computer to disperse

13 images.

14    THE COURT:  Well, others could log in and upload

15 it, basically --

16    THE DEFENDANT:  Yes.

17    THE COURT:  -- what you had on your computer?

18    THE DEFENDANT:  I used peer-to-peer software.

19    THE COURT:  Okay.  Did anybody force you to do

20 that?

21    THE DEFENDANT:  No.

22    THE COURT:  You did it voluntarily?

23    THE DEFENDANT:  Yes.

24    THE COURT:  Did you believe at the time that the

25 items that you possessed and were distributing via the

1   computer were child pornography?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And all of that occurred in Volusia

4   County, in the Middle District of Florida?

5          THE DEFENDANT:  Yes.

6          THE COURT:  A factual basis from the United States.

7          MS. MESA:  Your Honor, we will be relying on the

8   factual basis starting on page four of document 43.

9          THE COURT:  All right.

10         Mr. Howard, I'm not going to ask Mr. Jennings,

11   obviously, whether he agrees to these facts, but I do want to

12   make sure that you've had a chance to review them with him.

13         MR. HOWARD:  I have.

14         THE COURT:  All right.

15         I have previously reviewed those facts.  Based upon

16   what you tell me, Mr. Jennings, and the facts the United

17   States says it could prove, I find the facts are sufficient

18   to allow you to plead guilty if you still want to do that.

19         I told you when we started you did not have to

20   plead guilty.  Now we're getting close to the time where I'm

21   going to ask you what you'd like to do.

22         First, though, is there anything you want to tell

23   me or ask me that bears on your decision to plead guilty that

24   we haven't talked about?

25         THE DEFENDANT:  No.

1        THE COURT: Have you had any problem hearing or

2   understanding anything during the proceeding?

3        THE DEFENDANT: No, I haven't.

4        THE COURT: Is there anything you told me under

5   oath that you would now like to change because you think it

6   might not have been completely truthful?

7        THE DEFENDANT: No.

8        THE COURT: Would you like to talk to your attorney

9   further before I ask you how you'd like to plead?

10       THE DEFENDANT: No.

11       THE COURT: Are there any victims who wish to be

12  heard at this point?

13       MS. MESA: No, Your Honor.

14       THE COURT: All right. Mr. Jennings, how then do

15  you plead to the charge in Count One of the Indictment?

16       THE DEFENDANT: Guilty.

17       THE COURT: And how do you plead to the charge in

18  Count Two?

19       THE DEFENDANT: Guilty.

20       THE COURT: Are you freely and voluntarily entering

21  these pleas of guilty?

22       THE DEFENDANT: Yes, I am.

23       THE COURT: I determine that each plea of guilty is

24  knowingly, intelligently and voluntarily made, it's not the

25  results of force or threats or promises. I will recommend

1    that Judge Antoon accept your guilty plea.

2            Sentencing is usually at least 75 days from today

3    because that's how long it takes to do the presentence

4    investigation and prepare the report I talked to you about.

5    I don't have the sentencing date, but your lawyer will let

6    you know when it's set and he'll also explain the presentence

7    process to you.

8            Is there anything else we can take care of for the

9    United States at this point?

10           MS. MESA:  No, but thank you, Your Honor.

11           THE COURT:  Thank you.

12           For the defense?

13           MR. HOWARD:  Nothing further, Your Honor.  Thank

14   you.

15           THE COURT:  Thank you very much.

16           We're in recess.

17           (Proceedings terminated at 10:31 a.m.)

18                   - - - - - - - -

19                   Reporter's Certification

20   I certify that the foregoing is a correct transcript from the

21   record of proceedings in the above-entitled matter.

22                        s/Diane Peede, RMR, CRR
                          Official Court Reporter
23                        United States District Court
     Date:  October 16, 2013    Middle District of Florida

24

25