UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Docket No. 6:12-CR-261

. . . . . . . . . . . . . .
UNITED STATES OF AMERICA        :
                                :            Orlando, Florida
        Plaintiff               :            May 30, 2013
                                :            9:33 a.m.
            v.                  :
                                :
BRUCE LEE JENNINGS              :
                                :
        Defendant               :
. . . . . . . . . . . . . .


                TRANSCRIPT OF SENTENCING
        BEFORE THE HONORABLE JOHN ANTOON, II
                UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the Plaintiff:  Myrna Amelia Mesa

                    Nicole M. Andrejko


For the Defendant:  David A. Howard




Court Reporter:    Amie R. First, RPR, CRR
                   AmieFirst.CourtReporter@gmail.com

Proceedings recorded by mechanical stenography.

Transcript produced by Computer-Aided Transcription.

P R O C E E D I N G S

THE DEPUTY CLERK:  Case Number 6:12-CR-261, United States of America versus Bruce Lee Jennings.

Could we have appearances for the record, please?

MS. MESA:  Good morning, Your Honor.  Myrna Amelia Mesa for the United States.  Next to me is Joseph Grey with Homeland Security Investigations.  And also from the U.S. Attorney's Office is Nicole Andrejko.

MS. ANDREJKO:  Good morning, Your Honor.

MR. HOWARD:  Good morning, Your Honor.  David Howard on behalf of Mr. Bruce Lee Jennings who's present.

THE COURT:  Okay.  It's my understanding that the forfeiture issue was worked out; is that correct?

MS. ANDREJKO:  That's correct, Your Honor.  We signed a settlement agreement right before you walked in.

THE COURT:  Okay.

MS. ANDREJKO:  We can either file it with the Court after the hearing or give you a copy now, as long as we can have some copies for our records.

THE COURT:  Okay.  Why don't you give me the copy now, and I'll make sure that the clerk gives you copies as you need them.

And I also have something called stipulation of the parties, which I've seen for the first time; is that correct?

1    MS. MESA:  That's correct, Your Honor.  It's

2  marked as Government Exhibit Number 1.

3    THE COURT:  I'll take a minute to look at that.

4    Sir, would you stand and raise your right hand?

5    (Defendant sworn.)

6    THE DEFENDANT:  Yes, I do.

7    THE DEPUTY CLERK:  State your name for the record,

8  please.

9    THE DEFENDANT:  Bruce Jennings.

10    THE COURT:  Mr. Jennings, have you had any pills,

11  drugs, medication, or alcohol within the past 48 hours?

12    THE DEFENDANT:  I have not.

13    THE COURT:  Have you ever been diagnosed as having

14  a mental or emotional disorder other than depression?

15    THE DEFENDANT:  I have not.

16    THE COURT:  Do you have any reason to believe that

17  you suffer from such a disorder now?

18    THE DEFENDANT:  I do not.

19    THE COURT:  Are you taking medication now for

20  depression?

21    THE DEFENDANT:  No, I'm not.

22    THE COURT:  Are you thinking clearly and

23  exercising your best judgment at this time?

24    THE DEFENDANT:  Yes.

25    THE COURT:  Thank you, sir.  You may be seated.

1    Mr. Jennings, on January 28, 2013, you entered a

2  plea of guilty to count one of the indictment charging you

3  with distribution of child pornography in violation of

4  Title 18, United States Code, Sections 2252A(a)(2) and

5  (b)(1);

6    And count two of the indictment charging you with

7  possession of child pornography in violation of Title 18,

8  United States Code, Sections 2252(a)(5)(B) and (b)(2).

9    The Court has previously accepted your guilty plea

10  and has adjudged you guilty of those offenses.

11    We've now reached that stage in the proceedings

12  where I need to ask questions of you; your attorney,

13  Mr. Howard; and the attorney for the Government.

14    First, have you had an opportunity to read and

15  discuss with your attorney the presentence report?

16    THE DEFENDANT:  I did.

17    THE COURT:  Do you have any objections as to the

18  factual accuracy of the report?

19    THE DEFENDANT:  No, I don't.

20    THE COURT:  There were objections, I think, with

21  regard to the application of the guidelines; is that

22  correct?

23    MR. HOWARD:  The only substantive objection was

24  withdrawn.

25    THE COURT:  Okay.  So there are no objections?

1         MR. HOWARD:  There are none.

2         THE COURT:  Do you agree with that, Mr. Jennings?

3         THE DEFENDANT:  Yes, sir.

4         THE COURT:  Does the Government have any

5 objections?

6         MS. MESA:  No, Your Honor.

7         THE COURT:  The Court adopts the factual

8 statements and guideline applications contained in the

9 presentence report.

10         The Court, therefore, determines that the advisory

11 guidelines are total offense level 34; criminal history

12 category I; 151 to 188 months imprisonment; 5 years to life

13 supervised release; no restitution; $17,500 to $175,000

14 fine; $200 special assessment.

15         Are there victims in the courtroom?

16         MS. MESA:  No, there's not, Your Honor.

17         THE COURT:  There were statements included in the

18 -- by the probation office as a part of the presentence

19 report.

20         Do you know of any reason why the Court should not

21 now proceed with imposition of sentence?

22         MR. HOWARD:  I know of none, Your Honor.

23         MS. MESA:  No, Your Honor.

24         THE COURT:  Do you wish to make a statement or

25 present any information in mitigation of sentence?

1          MR. HOWARD:  I would like to present argument.

2          THE COURT:  Okay.

3          MR. HOWARD:  Thank you, sir.

4          THE COURT:  I want to make it clear, Mr. Howard,

5     that there were many letters submitted in support of

6     Mr. Jennings, and I've read all of them that were included.

7          MR. HOWARD:  Thank you, sir.  Appreciate it.

8          May I approach the podium?

9          THE COURT:  Yes, sir.

10          MR. HOWARD:  Thank you.

11          Your Honor, we agree that the guidelines called

12     for -- calls for a sentence of between 151 to 188 months.

13     And notwithstanding the gravity of the offense, we believe

14     that that sentence called for by the guidelines is simply

15     too much.

16          And we believe that the Sentencing Commission has

17     said so explicitly and unequivocally.  Because the

18     guidelines were, and improperly so, mandatory for so many

19     years, there's a measure of deference that seems to fall

20     towards the assessment of the Sentencing Commission.

21          And the case law has justified that deference by

22     indicating that the Sentencing Commission, more so than

23     Congress, has been placed in the position or is in the

24     position of doing empirical studies in making fair

25     assessments as to what ought to be called for as punishment

1    for the respective crimes.

2         And in this particular case, the Sentencing

3    Commission has not only been -- their authority or their

4    role in that regard has been usurped by Congress.  And they

5    have in more than one study pointed that fact out and said

6    because that has happened, these guidelines often call for

7    sentences that are excessive.

8         Because they're not the product of empirical

9    studies.  They are the product of Congress pushing up

10   minimum mandatories and imposing different aggravating

11   factors and essentially forcing the hand of the Sentencing

12   Commission to make sure that the sentences go up far beyond

13   what the Sentencing Commission would call for.  And they

14   have said so explicitly.

15        And I have been doing this for not that long but

16   20 years.  And during that time, for most of that period,

17   the guidelines were mandatory, and the Court was bound to

18   defer.

19        Fairly recently, that is no longer the case, but

20   the trend has been to defer nonetheless.  And I think that

21   is probably because it has been the practice for so many

22   years.

23        But the Supreme Court has made clear that as to

24   any particular defendant, the guidelines are not even to be

25   considered to be presumptively correct.

1    It has also said that the guidelines should serve

2  as a benchmark.  I think those two arguments or those two

3  statements are in conflict.

4    But at the end of the day, they have said that the

5  guidelines are not even to be considered presumptively

6  correct.

7    And so I would ask that the Court be mindful of

8  that at this time.  Particularly when the Sentencing

9  Commission as recently as this year has come back with a

10 study that said these things need to be overhauled.  They

11 need to be revised.  And we're going to make it a priority.

12    And they have said to Congress explicitly, these

13 guidelines are excessive, and they impose excessive

14 punishment on people who are -- particularly people who are

15 not producers of this material.

16    At the end of the day, we concede.  And I thought

17 -- and I hope that it was clear in our sentencing

18 memorandum that we're not arguing that this crime is not a

19 serious one.  It is reprehensible.  We agree with that.

20    And we recognize that there must be zero tolerance

21 for any offense that involves the abuse, especially the

22 sexual exploitation, of children.  We concede that readily.

23    However, to say that there's zero tolerance is not

24 the same thing as saying that when somebody is found to

25 have violated the law in that regard should be -- he should

1  be buried under the jail.

2       And as I was coming up here -- this was not

3  included, but it occurred to me yesterday to just take a

4  peek on the Internet at the numerous cases that involve

5  teachers who actually had sexual contact, relationships,

6  and abuse of children.

7       And I just punched in the search term, and I

8  looked at the sentences. And it was probation. It was a

9  year in prison. There was one that was particularly heavy.

10 It was five years in prison. And it went on and on and on

11 and on.

12       And what became clear is that offenses that

13 involve the actual sexual abuse of children are being

14 treated in a fashion that is much more forgiving than those

15 who sit at their computer and look at the stuff that has

16 been produced as a result of such acts of abuse.

17       And not to say that teachers are producing it, but

18 the Court gets my point, that when children are actually

19 physically abused, the persons who commit such offenses are

20 treated with a lot more leniency than people who watch it.

21       Now --

22       THE COURT: I don't know, Mr. Howard.

23       MR. HOWARD: That has -- and just like --

24       THE COURT: The abuse that is described here, at

25 least when I was in the state court system, would have

1   required a mandatory 25-year sentence, a lot of it.

2           MR. HOWARD:  Well, yes.  To the extent that some

3   of the images that are portrayed there may indicate --

4   particularly the egregious acts.

5           At the end of the day, we are still talking about

6   somebody who himself is not engaged in that.  He's engaged

7   in viewing it, which itself is a crime and ought to be a

8   crime.  And we recognize that.  He's contrite.  He accepts

9   responsibility.  And he's here to be punished because he

10  recognized that he must be.

11          And there's statements that he made or is alleged

12  to have made at the time.  And we have stipulated that if

13  the agent were to get on the stand, he would testify to it.

14  I can't attest to its veracity simply because I wasn't

15  present.  Mr. Jennings, however, was present.  And he felt

16  comfortable signing that document.

17          So we agree that there's statements that were made

18  at the time of his arrest which seem to reflect cavalier

19  attitude or some indifference to the gravity of his

20  offense.  But he's been sitting in a cage now for the last

21  eight months, and he's been thinking about it.  We've been

22  talking to him, and the gravity of the offense has come

23  home to him.

24          And not to say that he was totally oblivious all

25  along, but I respectfully submit that somebody who finds

himself sexually attracted to prepubescents is not doing

so, even though those statements were made, as a hobby.

There's an underlying malady.  There's an

underlying perversion which I think drives this type of

behavior.  Because it's not even as a matter of repetition.

Because the agents in this case, unfortunately,

work in that area and they have to see it often.  The

prosecutors have to see it.  Unfortunately, I have to view

it when I defend a case that involves it.

And it doesn't create any addiction nor does it

create any predisposition towards wanting to see more.

Because we're not so afflicted.

And so what I do suggest is that treatment is

important in these types of cases because that's the

driving force.  And these are not crimes that are borne out

of greed or malice.  They are crimes that are borne out of

perversion.

And it's a perversion that one has to restrain,

because we can't afford to have anybody act upon it.  But

at the end of the day, that is what the driving force is.

So what I'm asking the Court is to take into

consideration the fact that, one, there is a sickness that

needs to be treated here.

And Mr. Jennings recognizes that, and he will

willingly submit to whatever treatment is given him.  And

he will seek out more once released on supervised release
to make sure not only that he doesn't place himself and his
family in this position again but not participate in an
industry that exploits and victimizes children.  And he is
committed to that course for the remainder of his life.

The question is, at 64 years old, is it necessary
to essentially condemn him to prison for what may be the
rest of his life for the crime that he committed?  And we
respectfully submit that that is not warranted in this
circumstance.

What I did was, I advanced for the Court two cases
that were decided by the Eleventh Circuit in which they
upheld departures for defendants that were accused of the
identical crime and whose guidelines were identical.

And one, McBride, his facts and his life history
and the concern for what evils he may visit upon the
community and society at large were far more substantial
than is the case with Mr. Jennings.

To the extent that in McBride, this gentleman,
even though it may have been the product of abuse itself,
he may have been the product of abuse himself and
abandonment, was somebody who had repeated instances of
contact and abuse of minors himself and over the course of
what seemed to have been almost his entire life.

Notwithstanding that, the Court departed from

the 151 to 188 guideline range down to what I believe was

84 months. And the Court of Appeals deferred and said that

is an exercise of judgment which does not go out of the

bounds of what would be reasonable in this case.

And I think it goes without saying that if it was

reasonable in that case that it couldn't be said to be

unreasonable in this case where the facts are not as

egregious.

We did agree and we do concede that Mr. Jennings

possessed several more images than either of the defendants

in either of the two cases that we cited.

I respectfully submit, Your Honor, that there are

two reasons for that which do not necessarily go to his

character.

One is that when you do a search term on a

peer-to-peer software in 2009, '10 '11 '13, your download

speed is a heck of a lot faster than it was ten years ago.

So merely setting it up and going to bed overnight

and coming and seeing what it has harvested, you're going

to find much more harvest than you would ten years ago.

So he could actually have spent -- and, of course,

I'm speculating here. But he could actually have spent the

exact same amount of time engaged in the same effort and

yielded far less images just as a function of technology

and to the extent to which it has advanced.

          The other reason is that if the Court would -- in
this case, Jennings had two computers and a backup drive.
One backup, right?

          THE DEFENDANT:  Yes.

          MR. HOWARD:  And the same thing was downloaded
from one onto the other.  And the same material was backed
up from one onto the backup drive.

          So, in fact, what appears there are concededly
multiple images.  And we also concede that one photograph
or movie is too many.  We recognize that.

          But the same thing had been backed up from the
computer to the hard drive and from one computer to the
other.  And there are multiple instances where the stuff is
not even there in duplicate or triplicate but in
multiple-cate or whatever that word would be.  It's the
same thing several times.

          So it's not necessarily indicative of the fact
that he is watching everything that's there multiple times.
Just the sheer number is accounted for partly for the fact
that one was backed up to another and that to another.

          Also, Your Honor, in Mr. Jennings' case, as
opposed to -- what was that second case?  The other case
that we cited, he wasn't let out on bond.  So clearly he
could not have committed the same transgressions that the
defendant did in that case.

1    But in that case, I think it involved a
2    64-year-old man just like Jennings, and it had been going
3    on for five years just like Mr. Jennings.  He had far less
4    images.  Fair enough.
5    But he was let out on bond, and he skipped bond
6    and didn't appear for his plea and had to be arrested after
7    some confrontation with the police that -- that occurred.
8    So what I'm saying is, when we match up the facts
9    -- and in that case, the Court departed down to 72 months.
10   And the Court of Appeals said, that's within what we
11   consider to be reasonable.  That was their decision, based
12   upon the facts of that case.
13   So we're asking specifically that the Court
14   sentence him within the range of those two prior cases as
15   we are assured that the Court could be confident that the
16   Court of Appeals would consider, when juxtaposing those
17   facts with these, that that sentence would fall within what
18   is reasonable in this case.
19   There are some issues with the guidelines
20   specifically that I want to address and just provide the
21   Court my take on it, and it might be consistent with what
22   the Sentencing Commission might say if they were asked.
23   But the Sentencing Commission did point out at one
24   point that, for example, the computer enhancement that they
25   were forced to impose seemed to have not been appropriate

in the case of somebody who possessed and distributed as opposed to somebody who created it. They specifically said that at the time that they were forced to impose it.

And it would seem to me that such -- that that is an example of where the guidelines lead us astray and seem to be a little bit ridiculous.

Because, today, I would be highly surprised if there is ever a case involving child pornography that was not either -- if it's in hard copy and not on a computer, it was printed off of a computer. Because that's where our society has evolved to technologically.

You don't go down to a XXX erotic bookstore and buy child porn because it's not there. Because it's illegal. The only place it exists is in a computer.

So to take something which is consistent with the crime itself and turn it into an aggravating factor seems to be a measure of double counting.

Either you say, well, the base level offense should be two levels higher, which if they chose to take that position, that would be fine. But they didn't.

What they did is said, well, if you used a computer, we're going to enhance it by two levels, when a computer is always used in every instance. And there would not be an instance where it is not used.

And I would also suggest that if somebody who has

this type of perversion, even if it were available with

somebody in a dark alley in a trench coat selling it out of

his pocket than somebody who sits down and confines his

perversion to his basement and a computer screen is

probably much less of a danger to the community than

somebody who goes out and trolls to find this information.

So that seems to be one instance where the

guidelines and Congress by imposing on the Sentencing

Commission to raise the guidelines has gone and done

something that seems to be inconsistent with sound

judgment.

The way in which -- no matter the length of the

movie, whether it be ten seconds or ten hours, that if it's

a movie, it accounts for how many odd thousand images as

opposed to one movie is also something that I think is

irrational.

And I'm sure Congress had its reasons and I'm sure

it was put to the floor and I'm sure somebody agreed with

it, clearly, because that's what ended up happening.  But

it really doesn't make any sense practically.

But at the end of the day, Your Honor, what I'm

trying to say is that the guidelines, benchmark though they

may be, are not presumptively correct.

And they should not -- and we ask that they do not

-- serve as much of a guideline to this Court in this case

because they are inconsistent with what would be fair punishment.

And while we recognize that he must be punished, what is called for by the guideline range is excessive and more than is necessary to meet the interests of 3553 that are presented in this case.

There's one last thing that we mentioned, Your Honor. It's the fact that the Supreme Court has recognized that even where there is forfeiture involved because something was involved as an instrumentality of a crime that that forfeiture constitutes punishment and, therefore, is subject to the Eighth Amendment prohibition against excessive fines.

In this case, I would respectfully suggest that the $500,000 that this gentleman is being deprived of is more than most people similarly situated are fined or punished.

And since it is punishment and since that $500,000 essentially is going to leave him broke -- I've been in cases where far many -- far much more was taken in terms of a monetary fine, but they usually involved either ill-gotten gains or by way of drug dealing or theft or fraud or robbery, not where the money being taken was not earned as a result of illegal activity but it was earned with hard work and sweat over a lifetime.

He is being left broke essentially.  He has left
to his name a house that's approximately worth a million
dollars.  His interest in it since he owns it in its
entirety with his wife is half.  And that's what is being
taken.  And he's given it up.  He agreed to sell it.  He
signed it, and it's gone.

Fortunately, the Government was gracious enough
not to seek to take it all and to agree to settle such that
his wife won't be left herself on the street.  But he may
be to the extent that I don't know how long the Court will
give him, but his wife may be gone by the time he's out.
If she's not, those funds may be depleted.  So essentially
what we would be doing is leaving him with nothing.

And we recognize that that is something that we
have stipulated to.  We felt that we had to under the
circumstances.

But it is a part of his sentence.  And we believe
that since the monetary penalty is punitive since it is
punishment, that the enormity of that fine, of that
seizure, of that forfeiture ought to be taken into
consideration in the totality of the sentence so as to make
sure that the punishment has some balance.

So we would argue that it does warrant a
mitigation of the amount of time that he's sentenced to
prison.

1          That's it.  Thank you.

2          THE COURT:  Thank you, Mr. Howard.  And thank you

3   for your memo.

4          MR. HOWARD:  Thank you.

5          THE COURT:  Miss Mesa, do you wish to be heard?

6          MS. MESA:  Yes, Your Honor.

7          I've thought about this case for a long time.

8   Probably since the moment that Mr. Jennings was brought in

9   for his initial appearance.

10          And one of the things that I'm plagued by is the

11   fact that we go through life with something that we often

12   take for granted.  And that is every day we wake up and we

13   see someone and we say good morning.  We say hello.  We

14   introduce ourselves.  We are acknowledged in this world as

15   human beings, and somehow that acknowledgment gives us

16   life.

17          And in this particular case, when you look at the

18   defendant's characteristics, he's a 64-year-old man who has

19   been acknowledged throughout his life.  He describes his

20   own childhood as being basically uneventful.  No drugs, no

21   alcohol, no abuse by parents, no tragedy, no bad parenting.

22   And those are all in the negative.

23          But in the positive, what that translates to is

24   that he has had a good life.  And, in fact, as part of his

25   good life, as part of that acknowledgment in life, you

could probably Google Mr. Jennings. Because Mr. Jennings
had a business -- and it's described in the presentence
report -- and that business involved firearms.

And so throughout his life, this business has
resulted in something lucrative for him. And as part of
that lucrative part of his life, he has a million-dollar
home that his defense counsel has stated is one of the
forfeitures in this case. But we can't use forfeitures to
mitigate the crime.

And so in part of the --

THE COURT: He wasn't exactly saying that,
Miss Mesa, as I understood it. What Mr. Howard was saying
is that the forfeiture should be considered a part of the
punishment, not a mitigation of the crime. I see that as
being somewhat different.

MS. MESA: Yes, Your Honor.

THE COURT: I was going to ask you to comment on
that and to comment -- not that I don't want to hear
everything you have to say.

MS. MESA: Of course.

THE COURT: But at some point, if you would
comment on that as well as the argument regarding the
guidelines as a benchmark vel non or -- I should say and
whether the Court should be guided by the two Eleventh
Circuit cases he cited. He had mentioned McBride, and I

1  think the other one is Gray.

2          MS. MESA:  Yes, Your Honor.

3          So if you can --

4          THE COURT:  I don't want to interrupt your

5  argument.

6          MS. MESA:  That's fine.

7          THE COURT:  But since you're there, I --

8          MS. MESA:  I'm going to address that in a few

9  moments.

10          But getting back to the defendant's basic

11  characteristics, there is really nothing that mitigates his

12  behavior.

13          And if you look at the stipulation of testimony,

14  one of the things that Mr. Jennings states is that what

15  motivated him to get involved in looking at the abuse of,

16  the sexual abuse of, these prepubescent girls wasn't

17  something about his childhood or anything else that might

18  have been a tragedy as much as it was he was retired.  He

19  was bored.  And it served as an adrenaline rush for him.

20          These are not something that you would discuss

21  with regard to mitigating someone's criminal action which

22  might have happened in the case of McBride.  And I'm not

23  quite sure of all of the facts and circumstances in that

24  case.

25          But certainly a lot of these cases have other

1   mitigating factors.  And in this particular case, there are

2   no mitigating factors.

3           The fact remains is that the defendant has had a

4   fine life but for the fact that he's looking at these

5   images of children who have been abused, sexually abused,

6   sexually exploited.

7           And the description of some of those images and

8   the exorbitant amount of images or number of images that he

9   had, even if we were to take the defendant's argument and

10  say we're going to cut in half the number of videos, we

11  would go from 3,221 to 1,500 videos approximately.

12          If we were to cut it into one-third, we would

13  still have 1,000-plus videos.  And that's translates into

14  hundreds of thousands of images.

15          And when we talk about these videos versus images,

16  one of the reasons that we count them as 75 images is

17  because they're moving images.  And those moving images

18  stimulate differently than something that's flat on a page.

19          And that, the fact that he had 3,221 moving

20  pictures speaks a lot about what Mr. Jennings was doing

21  during a long period of time and almost all the time using

22  a peer-to-peer network to share with others as well as

23  download for himself.

24          And when we talk about the acknowledgment of

25  people and how we take for granted the good mornings and

the fact that knowing that someone acknowledges us, that is not the case for these young kids. They want to disappear.

When you read about their -- in their victim statements, what's going on in their victim statements, they don't want to be acknowledged every day. They want to be disappeared.

They don't want people googling their names on the Internet. Where some people find it as 15 minutes of fame, for them it's shame. For them, it's continued abuse.

And so it is in these statements that you find things such as being sexually abused is something you never forget, no matter how hard you try. And instead of being seen as a girl used and abused in the pictures, these men decide they would rather re-victimize me by using those pictures for their own sick sexual desires and trade them.

Or a parent who says, when you bring a child into this world, you're their soul protector. And when I read that the first time, I thought S-O-L-E. Their sole protector. Except she writes their soul protector, S-O-U-L. And so I don't know if it was a mistake on her part or not.

But for some unfortunate instance she has to write this, and all of a sudden these poor children are frozen on the screen for what could be perpetually a time period that we can't find an end to.

1          If you can give me a second to confer with my

2    counsel with regard to the mitigation issue, I'll address

3    that in one moment.

4          My counsel, who is more learned on this particular

5    issue than me, has given me a quote that Commission viewed

6    forfeiture as a wholly separate sanction, which, if

7    imposed, was intended to be in addition to and not in lieu

8    of imprisonment.  And the case that's cited is Weinberger,

9    91 F.3d at 644.

10         Does that respond to your question?

11         THE COURT:  One of them.

12         MS. MESA:  Okay.  And then with regard to McBride,

13   I'm not particularly well aware of the McBride case.  But I

14   do know this.

15         Oftentimes, when the bench departs from a

16   guideline sentence, it's because there's mitigation and

17   extenuation in the case that's being considered as well as

18   the aggravation in the case.

19         And at this point in time, there's nothing that's

20   been presented aside from the character letters that were

21   written on behalf of Mr. Jennings that would mitigate this

22   case to the extent that this Court should depart from the

23   guideline sentence.

24         Certainly at the beginning I talked about

25   Mr. Jennings' life or his characteristics because I really

1  don't know his life really.

2      But certainly when you describe a life that is

3  uneventful of tragedy or abuse and that there is no impetus

4  for committing these crimes except for boredom or to get an

5  adrenaline rush and for your own sexual gratification,

6  certainly those are not mitigating factors.

7      I think we would all agree that he needs

8  treatment; but certainly aside from the treatment, there

9  should be punishment.  And that punishment should serve not

10  only to deter him and to deter others, but the punishment

11  should fit this particular crime in which he has amassed

12  over 240,000 images.  More than.  Not less than.  More

13  than.  Duplicate or not duplicate.

14      Even if he amassed 150,000 of these images, that

15  is a significant number of images.  And these are not

16  images of little kids naked on the beach.  These are not

17  that.  These are sexually abused children, toddlers,

18  prepubescent children; sadistic, masochistic penetration,

19  oral, vaginal, and anal.

20      These are significantly exploitative and abusive

21  cases for which he seeks to quell his boredom.

22      Your Honor, we ask for, at a minimum, a low end of

23  the guideline sentence.

24      MR. HOWARD:  Your Honor, would the Court allow me

25  a brief retort?  I will be very brief.

1    Your Honor, I did review the Government's

2 sentencing memorandum.  And at page 9 when it speaks about

3 the history and characteristics of the defendant, what it

4 essentially said is he committed the crime.  That doesn't

5 speak to his history or his characteristics.  It speaks to

6 the offense conduct.

7    So it's really a circular argument.  He has bad

8 character because he committed the crime.  Well, he's here

9 because he committed the crime.

10    So 3553 did not intend for us to say, well,

11 because you committed the crime, you have bad character.

12 It would seem to be redundant if that's what they were

13 intended.

14    So we would respectfully suggest that the argument

15 that he has bad character because he committed the crime is

16 a circular argument and is not what -- is not the focus

17 that Congress intended when it spoke to that particular

18 mitigating factor.

19    Secondly, what is just punishment is the question

20 of the day.  So to say that he deserves just punishment

21 because he committed the offense is likewise a circular

22 argument because that is a question here.  What is just?

23 And what would be appropriate under the circumstances?

24    The Commission may have deemed fines and

25 forfeiture to be something which ought to be in addition

to, but the Supreme Court made clear that it is punishment.

And what we should think about is if somebody said, you know, I have $500,000.  And you give them the choice, you could go to jail for a year and keep your $500,000, or you can stay out and we'll leave you flat broke.  And I respectfully suggest that everybody will not choose to go -- to stay out and be flat broke.

That is a measure of -- that has a punitive component to be -- to take all the resources that it requires for you to live.  It's punitive.

So even if the Commission voiced an opinion at some time that they think it's in addition to and it's really a different -- it's a different measure of punishment which ought not to be taken into consideration when determining what the sentence is, I respectfully disagree.  And I think that it's inconsistent with what we know and common sense.

The Government also went on in its memo to speak about what the guidelines said with regard to the type of departures which ought to exist during -- or how sentences and departures are to be viewed with respect to sex crimes as opposed to other crimes.

And then it concedes that the guidelines are no longer mandatory, which I think vitiates the entire argument.  Because what that spoke to was the constraints

within which the Court must make its decision.  And now we know that those constraints do not exist.

We defer to the Court's discretion because that's what we think is the only thing that's at play here.  And we respectfully request that the Court temper its judgment with mercy and allow him -- if he gets six or seven years, he'll be getting out at seventy years old.

And a time for him -- and he will have a long time to reflect during six or seven years of incarceration, during which time, as we said in our memo, his incarceration may be a little bit more punitive than most.  And that's as a result of his offense.

So that itself is an argument that, though it's valid, may go to something that he may deserve.

But the fact is it is so.  That this, whatever sentence the Court imposes on this man of advanced age is going to be a tough one.  And we're asking that it not be too excessive.

Thank you.

THE COURT:  Mr. Howard, does your client wish to be heard?

MR. HOWARD:  May I inquire?

No, Your Honor.  He had asked me yesterday when I saw him just to convey that this will never happen again, and he is extremely contrite.

1        THE COURT: You understand that you have a right

2 to speak now?

3        THE DEFENDANT: Yes, I do.

4        THE COURT: And you would like not to?

5        THE DEFENDANT: That's correct.

6        THE COURT: The Court has asked the defendant why

7 judgment should not now be pronounced; and after hearing

8 defendant's response, the Court finds no cause to the

9 contrary.

10       The parties have made statements on their behalf.

11 The defendant was heard through counsel and elected not to

12 make a personal statement.

13       And the Court has reviewed the presentence report.

14       Pursuant to Title 18, United States Code, Sections

15 3551 and 3553, it's the judgment of the Court that the

16 defendant, Bruce Lee Jennings, is hereby committed to the

17 custody of the Bureau of Prisons to be imprisoned for a

18 term of 121 months.

19       This term consists of 121 months on count one and

20 a term of 121 months on count two, such terms to run

21 concurrently.

22       Upon release from imprisonment, Mr. Jennings, you

23 shall serve a ten-year term of supervised release. This

24 term consists of a ten-year term as to each of counts one

25 and two, such terms to run concurrently.

While on supervised release, you shall comply with the standard conditions adopted by the Court in the Middle District of Florida. In addition, you shall comply with the following special conditions.

You shall participate in a mental health treatment program specializing in sexual offender treatment and submit to a polygraph -- and submit to polygraph testing for treatment and monitoring purposes.

You shall follow the probation officer's instructions regarding the implementation of this directive.

Further, you shall contribute to the cost of such treatment and polygraphs not to exceed an amount determined reasonable by the probation officer based on the ability to pay or the availability of third-party payment and in conformance with the probation officer's sliding scale for treatment services.

You shall register within -- you shall register with the state sexual offender registration agency in any state where you reside, visit, are employed, carry on a vocation, or are a student as directed by the probation officer.

The probation officer shall provide state officials with all information required under Florida Sexual Predator and Sexual Offender Notification and

Registration Statutes, Florida Statute 943.0435, and the
Sexual Offender Registration and Notification Act, Title I
of the Adam Walsh Child Protection and Safety Act 2006,
Public Law 109-248 and may direct the defendant to report
to these agencies personally for required additional
processing and photographing, fingerprinting, and DNA
collection.

You shall have no direct contact with minors --
that is, people under the age of 18 -- without the written
approval of the probation officer, and you shall refrain
from entering into any area where children frequently
congregate including schools, day care centers, theme
parks, playgrounds, et cetera.

You are prohibited from possessing, subscribing to
or viewing any images, video magazines, literature, or
other material depicting children in the nude or in
sexually explicit positions.

You shall not possess or use a computer with
access to any online service at any location, including
employment, without written approval from the probation
officer.

This includes access through any Internet service
provider, bulletin board system, or any public or private
computer network system.

You shall permit routine inspection of your

1  computer system, hard drives and other media storage

2  materials to confirm adherence to this condition.  The

3  inspection shall be no more intrusive than is necessary to

4  ensure compliance with this condition.

5  You shall inform an employer or other third party

6  that may be impacted by this condition of the

7  computer-related restriction and the computer inspection

8  provision of the condition.

9  You shall submit to a search of your person,

10  residence, place of business, any storage units under your

11  control, a computer or vehicle conducted by the United

12  States probation officer at a reasonable time and a

13  reasonable manner based upon reasonable suspicion of

14  contraband or evidence of a violation of condition of

15  release.

16  You shall inform any other residents that the

17  premises may be subject to search pursuant to this

18  condition.

19  Failure to submit to a search may be grounds for

20  revocation.

21  You shall be prohibited from incurring new credit

22  charges, opening additional lines of credit, or obligating

23  yourself for any major purchases without approval of the

24  probation officer.

25  You shall provide the probation officer access to

1    any requested financial information.

2          Having been convicted of a qualifying felony, you

3    shall cooperate in the collection of DNA as directed by the

4    probation officer.

5          The mandatory drug testing requirements of the

6    Violent Crime Control Act are waived.  However, the Court

7    orders that you submit to random drug testing not to exceed

8    104 tests per year.

9          The victim claiming -- or victims claiming

10    restitution in this case suffered undeniable harm as a

11    result of being abused and exploited during the production

12    and subsequent viewing of child pornography.

13          The evidence as it currently stands in this

14    particular case involving possession and distribution of

15    child pornography is not sufficient to conclude that the

16    victims suffered loss as a proximate result of the offense

17    conviction.

18          Therefore, as required in Title 18, United States

19    Code, Section 2259(b)(3)(F) the victim does not appear to

20    be entitled to restitution.

21          Based on the financial status of the victim,

22    particularly in light of the forfeiture, the Court waives

23    imposition of the fine.

24          The Court orders that the defendant forfeit to the

25    United States immediately and voluntarily all -- any and

all assets previously identified in the preliminary order

forfeiture that are subject to forfeiture and those assets

that are referred to in the stipulation provided by the

Court at the commencement of this hearing.

It is further ordered that you shall pay the

United States special assessments totaling $200, which are

due immediately.

After considering the advisory sentencing

guidelines and all the factors identified in Title 18,

United States Code, Section 3553(a)(1) through (7), the

Court finds that the sentence imposed is sufficient but not

greater than necessary to comply with the statutory

purposes of sentencing.

The Court, having pronounced sentence, does

counsel for the defendant or the Government have any

objections to the sentence or the manner in which the Court

pronounced sentence?

MR. HOWARD:  No objection, Your Honor.

MS. MESA:  Your Honor, I'm just seeking

clarification.  There was a motion filed by Mrs. Jennings

saying that she was a victim in this case.  And the

Government opposed that motion.  But there was no order

from this Court with regard to that.

MR. HOWARD:  I think that motion is moot at this

point.  We withdraw it.

1          MS. MESA:  Well, it's not Mr. Howard's motion.

2          MR. HOWARD:  I'm getting the nod from counsel.

3          MS. KISTEMAKER:  I'm counsel for Miss Joanne

4     Jennings.

5          THE COURT:  And what is your name, ma'am?

6          MS. KISTEMAKER:  Erum Kistemaker.

7          At this point, we would withdraw that motion.

8          THE COURT:  Okay.  And would you spell your last

9     name?

10         MS. KISTEMAKER:  K-I-S-T-E-M-A-K-E-R.

11         THE COURT:  So the motion to have Miss Jennings

12    declared a victim is withdrawn?

13         MS. KISTEMAKER:  Yes, Your Honor.  Thank you.

14         THE COURT:  Thank you.

15         Thank you for bringing that to my attention,

16    Miss Mesa.

17         MS. MESA:  Sure, Your Honor.

18         There's no objection to the sentence.

19         THE COURT:  The defendant is hereby remanded to

20    the custody of the United States Marshal to await

21    designation by the Bureau of Prisons.

22         Mr. Jennings, you have the right to appeal from

23    this sentence within 14 days from today's date.  Failure to

24    appeal within the 14-day period shall be a waiver of your

25    right to appeal.

The Government may file an appeal from this sentence.

You're also advised that you're entitled to assistance of counsel in taking an appeal. And if you're unable to afford a lawyer, one will be appointed for you.

If you are unable to afford a filing fee, the clerk of court will be directed to accept the notice of appeal without such fee.

Sir, do you understand everything that's happened?

THE DEFENDANT: I do.

THE COURT: Thank you.

MR. HOWARD: Your Honor, two matters. One, we would respectfully request that he get credit for time already served.

THE COURT: Well, I don't do that. I believe that's the law, but it's calculated by the Bureau of Prisons.

MR. HOWARD: And we'd also ask if the Court would be so kind as to recommend a facility of incarceration or designation as close to Daytona Beach as possible.

THE COURT: Well, what is the basis of that motion?

MR. HOWARD: I use Daytona because that's the closest major city where his wife and mother live. So that is a reason --

1          THE COURT:  Will his wife and mother visit him in

2   prison?

3          MR. HOWARD:  They certainly intend to.

4          THE COURT:  I make a recommendation to the Bureau

5   of Prisons that the defendant be confined at Coleman, which

6   is in Central Florida.  And I do that because I think it's

7   -- the defendant would benefit from contact from family

8   members and perhaps family members would benefit from

9   contact with him.

10          And I believe that if there is family support and

11   that is fostered through contact that it is rehabilitative

12   or at least has that potential.

13          MR. HOWARD:  Sure.  The family had just expressed

14   to me that their opinion that the easier trip would have

15   been to Jesup and that's why they would ask for that.

16          THE COURT:  Jesup.

17          MR. HOWARD:  I have no personal opinion.  But I'm

18   just conveying the request, Your Honor.  But we defer to

19   the Court's judgment.

20          THE COURT:  Well, it may be a judgment of

21   geography more than anything.  I thought that Coleman would

22   be closer to Daytona than any other federal facility.

23          MR. HOWARD:  We defer.  But I know that Jesup was

24   what they had in mind.

25          THE COURT:  Well, I still recommend Coleman.

Number one, I think it's closer.  And if I'm incorrect on
that, it's still -- because it's such a large facility, the
likelihood -- I believe the likelihood of designation
there, if my recommendation is given any weight, would be
greater.

        MR. HOWARD:  And, finally, Your Honor,
Mr. Jennings would like to thank the Court for merciful
exercise of its discretion.

        And for my part, it's been a pleasure.  And thank
you for the Court's graciousness for counsel's missteps
along the way.

        THE COURT:  I thank both counsel for their
assistance.  Thank you.

        (Proceedings adjourned at 10:35 a.m.)


                C E R T I F I C A T E


        I certify that the foregoing is a correct
transcript from the record of proceedings in the
above-entitled matter.

s\Amie R. First, RPR, CRR